## J. P. USHER v. O. S. HIATT AND C. F. MARIS.

1. SPECIAL CONTRACT; *Meaning of Certain Words therein.* *Held,* Under the special facts of this case, that the word "maintain," as used in a certain special contract for growing a hedge, means maintenance in the nature of cultivation; and that the words "ordinary stock," as used in said contract, mean such stock as is permitted by law to run at large. *And further held,* That the parties contracting to grow the hedge were, under the special contract, required to do everything that was reasonable and practicable to grow the hedge, but were not required to do what was unreasonable and impracticable.

2. SPECIAL CONTRACT; *Recovery.* Where a plaintiff states in his petition all the facts of his case, setting forth a special contract, the work done thereunder, and its value, and then proves such facts, he may recover thereon, provided he could have recovered thereon at common law, either upon the special contract, or upon a *quantum meruit* count.

### *Error from Leavenworth District Court.*

ACTION by *Hiatt* and *Maris,* counting on a contract set forth in full in the opinion, *infra.* The district court, at the September Term, 1877, gave judgment in favor of plaintiffs for $1,473, and costs, and against *Usher,* defendant, who brings the case here for review.

*J. P. Usher,* plaintiff in error, for himself.

*H. T. Green,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This is the second time that we have been called upon to consider this case. (*Usher v. Hiatt,* 18 Kas. 195.) At the first time, we reversed the judgment of the court below, and remanded the case for a new trial. A new trial was afterward had before the court below and a jury, which resulted in a verdict and judgment in favor of the plaintiffs below, Hiatt and Maris, and against the defendant below, Usher, for $1,473 and costs. Usher now as plaintiff in error seeks to have this judgment reversed. The principal grounds urged for reversal are, that the court below miscon-

strued the contract between the parties. Said contract reads as follows:

"It is agreed between John P. Usher, O. S. Hiatt and C. F. Maris, as follows: Said Hiatt & Maris agree to reset, cultivate and complete the hedge upon sections 23 and 24 of township 10, range 22, in Leavenworth county, and section 19, in Wyandotte county, immediately east of said sections, which was undertaken to be grown by A. S. Penfield; to cultivate and maintain said hedge in a skillful manner, until the same shall be sufficient to turn ordinary stock, and such as is contemplated by the laws of Kansas relating to hedge fences. The above sections of land belong to said Usher, and the hedge when completed will divide these lands into quarter-sections. In consideration of this agreement to construct and the construction of said hedges for the said Usher, he agrees to and with the said Hiatt & Maris that if they shall have said hedge set and reset in good and proper cultivation on or before the 1st day of July next, 1871, the said Usher will pay them at that date one thousand ($1,000) dollars; and if the said parties continue to cultivate and maintain said hedge as before agreed, said Usher will pay them five hundred dollars ($500) on the 1st day of July, 1872, and upon the completion and turning over said hedge to said Usher, he will pay them one thousand dollars ($1,000), or the third thereof on the completion of the hedge upon a section, as the case may be. If it shall then happen that in consequence of rains, the parties cannot put all of said hedge in good condition by the 1st of July next, as above agreed, then said Usher will pay the $1,000 as soon as the hedge is in such condition; and the parties mutually agree with each other that the said Hiatt & Maris will set and reset and cultivate said hedge as aforesaid without any delay on their part, and said Usher will promptly and faithfully pay them as agreed herein.      J. P. USHER.
O. S. HIATT.
"LEAVENWORTH, Nov. 5, 1871.      C. F. MARIS."

The words, "until the same shall be sufficient to turn ordinary stock, and such as is contemplated by the laws of Kansas," are construed by all parties to mean "such" *hedge* and not "such" *stock* "as is contemplated by the laws of Kansas."

We shall now proceed to consider the alleged errors as discussed in brief of plaintiff in error.

I. What do the words "cultivate and maintain" mean, as used in said contract? They are first used where Hiatt and Maris agree "to cultivate and maintain said hedge in a skillful manner," &c. And secondly: After providing in the contract that Hiatt and Maris shall set and reset said hedge, putting it in good condition and in proper cultivation, and providing that Usher shall pay them $1,000 therefor, the words are again used as follows: "And if the said parties continue to cultivate and maintain said hedge as before agreed, said Usher will pay them five hundred dollars" more. The word "cultivate," as used in this connection, we think has its usual and ordinary signification; and the word "maintain," as used in this contract and in connection with the word "cultivate," means to maintain in the nature of cultivation. The two words are used together and must be construed together, and both must be construed in the light of all the surrounding circumstances; and when so construed, we think they mean such cultivation and maintenance as plowing, hoeing, trimming, plashing, replanting, &c., and do not mean the building and maintaining of fences (as seems to be claimed by counsel for plaintiff in error) on both sides of the hedge, to protect it from the casual depredations of roaming cattle allowed to run inside or outside of the fields. The outside fence, however, seems to have been already built when said contract was made. It must be remembered that the plaintiffs below were to receive less than fifty cents per rod for setting, resetting, cultivating and maintaining said hedge, which fact would seem to demolish all supposition that the plaintiffs were to either build or maintain fences on both sides of the hedge. There were from sixteen to eighteen miles of hedge to be set, cultivated, &c., and they were to receive only $2,500 for it. The principal injury that was done to the hedge by stock, was done by the stock of the tenants of the defendant below, plaintiff in error.

II. What do the words "ordinary stock," as used in said contract, mean? The hedge was to be "sufficient to turn ordinary stock, and such [hedge] as is contemplated by the laws of Kansas relating to hedge fences." Under the laws

of Kansas a hedge should be "composed either of thorn or Osage orange." (Gen. Stat. 486, § 1.) And "all hedges shall be of such height and thickness as will be sufficient to protect the field or inclosure." (Gen. Stat. 487, § 2; Laws of 1873, p. 183.) And "swine are not allowed to run at large." (Gen. Stat. 1011, § 46.) The statutes therefore merely require that the hedge shall be composed of "thorn or Osage orange," and shall be sufficient "to protect the field or inclosure" from stock, but from such stock only as is supposed to be running at large; and as said contract was drawn up with reference to the statutes, the words "ordinary stock," as used in the contract, were intended to mean such stock only as is permitted by law to run at large; and, therefore, as swine are not permitted to run at large, the words "ordinary stock," as used in said contract, did not include swine. The jury also found that swine were not ordinary stock under the contract.

III. The contract required that the plaintiffs should do everything that was reasonable to make a good hedge, but it did not require that they should do unreasonable things.

IV. And the contract required that the plaintiffs below should grow a hedge everywhere on the contemplated lines where it was practicable for them to do so; but it did not require them to grow a hedge where it was impracticable to do so. Of course, it was *possible* for them to grow a hedge anywhere — even across streams, by building culverts, etc.— but we do not think that the contract required them to do everything that was possible, but only such as was practicable. This seems to have been the opinion of the court below, and we think the court below correctly interpreted the opinion of this court formerly delivered in this case. There is nothing in the record that shows that "the court [below] was of the opinion that if the defendants [plaintiffs below] made a *reasonable* effort to perform their contract, whether they did in fact perform it or not, they discharged their whole duty." The court below was of the opinion that the plaintiffs were required to perform their contract, but that their contract,

when rightfully construed, did not require them to perform unreasonable things.

But suppose that the plaintiffs did not perform their contract in every particular — that would not prevent them from recovering. *Usher v. Hiatt,* 18 Kas. 195; *Duncan v. Baker,* ante, p. 99. They might still recover as upon a *quantum meruit* count. Both the pleadings and the evidence were sufficient for that purpose. The petition stated "the facts" constituting the plaintiffs' cause of action, just as it should have done, (Code, § 87, Gen. Stat. 647,) setting forth the special contract, the work done under it, and its value; and the evidence introduced proved these facts. Upon the facts thus pleaded and proved, the plaintiffs had a right to recover, provided they could have recovered thereon at common law, either upon the special contract or upon a *quantum meruit* count.

The judgment of the court below will be affirmed.

All the Justices concurring.