WM. H. CLOPTON, EX'R, etc., VS. JULIA HALL.

1. PROMISSORY NOTES: *Liability of joint makers and sureties. Consideration.*

The liability of a copromisor, surety or guarantor, to a promissory note, rests upon the presumption of participation in the original consideration; and the signing of a note after its delivery, after the execution of the contract, is independent of the original contract and disconnected from its consideration, and the liability incurred for payment must depend upon some other inducement or consideration valuable in law.

2. SAME: SAME: *Burden of proof.*

The burden of proof as to the consideration of a contract rests upon the plaintiff, where it is not by law implied. The subsequent signing of a note by a surety, after its delivery, constitutes a separate agreement; the consideration is not imported by the instrument itself, but must be shown *aliunde*.

3. SAME: SAME: *Case in judgment.*

L. Houghton executed his three promissory notes to Hall after maturity. James Houghton subscribed his name below that of L. Houghton. The phraseology is in the singular, " I promise," etc. There was no evidence as to the consideration or inducement for the signing by James Houghton. *Held*, that as to James Houghton, the note did not import consideration; that it was incumbent on the plaintiff to show it *aliunde*, in the absence of which he is not liable.

ERROR to the Circuit Court of *Monroe* County.
Hon. R. B. BOONE, Judge.

The facts necessary to a full understanding of the case are fully stated in the opinion of the court.

The following is assigned for error, to wit :

1. The circuit court erred in sustaining the demurrer of said plaintiff below, to the second plea of defendant James H. Houghton.

2. And in overruling the motion of defendant Clopton (plaintiff in error), for a separate trial of issues joined upon the sole pleas of his testator, and himself as executor, apart from his codefendant, L. Houghton.

3. And in giving plaintiff Hall's 1st, 2d, 3d, 4th, 5th, 6th, 7th, 8th and 9th charges to the jury.

4. And in refusing to give to the jury defendant Clopton's 6th and 7th charges to them asked and refused.

5. And in overruling the motion of defendant Clopton, to set aside the verdict of the jury rendered against him as executor, and for a new trial of the cause.

*Sale & Doud,* for plaintiff in error :

Filed an eloborate brief and written argument, citing in support of the many ˜points made, the following authorities :  On points made on second assignment of error, cited 3 Phil. Ev., 135 ; Dougherty *v.* Dorsey, 4 Bibb, 207.  On third assignment of error, cited Story on Prom. Notes, § 467 and notes 1, 2 and 3 ; id., 474 ; Stone *v.* White, 8 Gray, 589, 593 ; Mecorney *v.* Stanley, 8 Cush., 85 ; Tenney *v.* Prince, 4 Pick., 385 ; Same *v.* Same, 7 id., 243 ; Hunt *v.* Adams, 5 Mass., 359, 361, 362 ; Same *v.* Same, 6 id., 523 ; Oxford Bank *v.* Haynes, 8 Pick., 423, 427 ; Buckford *v.* Gibbs, 8 Cush., 154, 156 ; Klein *v.* Currier, 14 Ill., 237 ; 2 Pars. on Bills and Notes, 124, 126, and R. Y. ; 2 Pars. on Cont., 468, 469 ; Jackson, Adm'x, *v.* Jackson, 7 Ala., 791 ; Alsobrook *v.* Southerland, 2 Stewart & Port., 267 ; Leonard *v.* Vredenburg, 8 Johns., 29, 38, 39 ; Thomas *v.* Jennings, 5 S. & M., 627 ; Willis & Conley *v.* Ives, 1 id., 307 ; Delano *v.* Bartlett, 6 Cush., 364, 367 ; Powers *v.* Russell, 13 Pick., 69, 76, 77 ; Tourtellot *v.* Rosebrook, 11 Met., 460 ; Palmer *v.* Stevens, 1 Denio, 471, 480 ;

Brown v. King, 5 Met., 173, 181; Spooner v. Gardiner, Ryan & Moody, 84, in 21 Eng. Com. Law Rep., 386; Delauney v. Mitchell, 1 Stark., 439, in 2 Eng. Com. Law Rep., 462. Other errors argued without authorities.

*Reuben Davis*, on the same side.

*Houston & Reynolds*, for defendant in error:

1. In this case, the point complained of, and embodied in the second assignment of error is, that Mrs. Hall was a competent witness against L. Houghton, but incompetent as against James Houghton's estate, and that her testimony against D. Houghton's bill of particulars was damaging to James Houghton's estate. We insist the testimony did not damage James Houghton's estate, because every dollar of payments claimed in the bill of particulars was allowed both defendants. Hence this constituted no ground for reverasal or even of complaint. Perry v. Clarke, 5 How., 495; Cartwright v. Carpenter, 7 id., 328. It was a misjoinder of parties, and the remedy proper for him to have applied would have been a plea in abatement for that reason. He, however, lost that choice by his pleas in bar to the actions, which not only admitted that he was properly sued jointly with La Fayette, but that he was a joint maker of the note in manner and form as alleged in the plaintiff's declaration. Thomas v. Jennings, 5 S. & M., 630, § 2; Tiller v. Shearer, 20 Ala., 597, 598.

2. The third and fourth assignments of error may be properly examined under the same head. All the charges, when considered, will be found to involve the same questions, as follows: 1. What character did defendant's testator, James H. Houghton, occupy in this suit, as a party to the instrument sued on? One of the makers, an indorser, or a guarantor? 2. Is the *onus* on the plaintiff in this suit to show a good cause and valuable consideration, to support the promise by defendant's testator, made in the instrument sued on, or does it devolve upon the defendant to show the want of such a consideration, as a matter of defense for the estate he represents? The following authorities were cited and commented on by counsel on points made in the above ques-

tions: Code, 1871, § 683; Code, 1857, p. 518, art. 237; Tiller *v.* Shearer, 20 Ala., 597, 598; Code, 1871, § 2227; Code, 1857, p. 355, art. 1; Minor *v.* Michie, Walk., 24; Moore *v.* Mickell, id., 231; Story on Prom. Notes, §§ 7, 181; Pars. on Bills and Notes, vol. 1, p. 175; Thompson *v.* Hall, 16 Ala., 209, 210; Click *v.* McAfee, 7 Port. (Ala.), 62; Nesbit *v.* Bradford, 6 Ala., 746; Miller & Cobb *v.* McIntyre, 9 id., 638; Stev. on Plead., 247, 424; 2 Sand. Plead., 206, note 22; Phil. Ev., 158; 8 East, 9; 3 Bos. & Puller, 456; Hullum *v.* State Bank, 18 Ala., 807–809; 13 Ohio, 228; Bright *v.* Carpenter, 9 id., 139; Story on Prom. Notes, § 479, 480; Lewis *v.* Harvey, 18 Mo., 74; 13 S. & M., 617; 2 Pars. on Notes and Bills, §§ 119–121.

SIMRALL, J, delivered the opinion of the court.

This was an action of debt, brought by Julia A. Hall on three promissory notes, one for $4,173.27; one for $468.45, and one for $512.60. Each of these notes is in the singular, "I promise to pay," etc., and each subscribed by L. Houghton and James H. Houghton.

It was found that the intestate of the plaintiff in error signed the notes eighteen months after their date, and after they became due, by subscribing his name immediately under that of the original maker.

No witness was examined who was present at the time the note was thus subscribed. Upon what inducement, moving from the one to the other (if any), at the time, it was done, has not been positively shown. Apparently the intestate was a joint promisor. In reality, was that his contract?

It is settled by authority in this state, Thomas *v.* Jennings, 5 S. & M., 630; S. C., 13 id., 623, and supported by well considered cases in other states, that if a person writes his name on the back of a promissory note, so that he cannot be considered as an indorser in the ordinary and usual way; as where A. is the maker and B. is the payee, and in that condition of parties, C. writes his

name on the back, it is open to testimony to show what sort of contract C. intended to make. The liability will be such as shall be established by the proof. If such indorsement was contemporaneous with the making of the note, it will connect itself with that contract, and will be supported by its consideration; but if subsequent thereto, and not done in pursuance of an arrangement for the credit of the maker, and for the security of the payee, it must rest upon a consideration of its own; otherwise it is *nudum pactum*. Moies *v.* Bird, 11 Mass., 436; Hunt *v.* Adams, 5 id.. 358; White *v.* Howland, 9 id., 314; Miller *v.* Gaston, 2 Hill (N. Y.), 190; Hough *v.* Gray, 19 Wend., 202; Leonard *v.* Sweetzer, 16 Ohio,    4.

It would seem to be equally clear, if the party signs the note as comaker or copromisor after the note has been delivered to the payee, and has become a perfect executed 'contract between the original parties, such signing is independent of the original contract and disconnected from its consideration, and is dependent on such inducement as existed at the time, and creates a liability, as there may have been a consideration deemed valuable in law, *vel non*. Beebe & Brother *v.* Moore, 3 McLean, 388.

The intestate subscribed his name immediately under that of the original maker after the note became due. What is the nature of such a contract? It is evident that something was meant by the act; some sort of liability was intended to be assumed. As logically argued in Camden *v.* McKoy, 3 Scam., 437, the sort of liability intended may be deduced from the place on the paper that the party puts his name. It may be presumed, if on the back, as common indorser, guaranty or joint promisor, according to the circumstances. If under the name of the original maker, the inference would be just that he meant to be bound for the original makers as security.

If the intestate, instead of subscribing the note, had indorsed his name on the back, the presumption would be that he meant to bind himself, according to some of the cases, as a guarantor. 3 Scam., 437, *supra;* Harding *v.* Larkin, 41 Ill., 413; Story on

Prom. Notes, § 133.    According to others, as joint maker.    5 S. & M., 630; 13 id., 623; Dean *v.* Hall, 17 Wend., 214.

Subscribing in the manner he did, the presumption is, that he engaged to pay the sum of money mentioned in the note for the maker.

It is impossible that the intestate became a copromisor of the note, so that it can be averred, with legal truth, that he made and delivered the note to the payee as of its date, and promised to pay according to its tenor and effect.    That would be repugnant to the truth.    For he did not become a party to the paper until it had been in existence as a perfect contract for eighteen months, between his brother and Mrs. Hall.    Can it be said that he promised to pay the money on a day long passed when his contract was made?    His subsequent signature may bind him to pay the money.    But it is by virtue of the contract he then made, and not by reason of the inducement and consideration which originally gave rise to the note.    That is past and executed.    He had nothing to do with it.

When it is disclosed that the intestate is not implicated in the original consideration of the note, and that the payee granted the credit, and accepted the promise upon the sole credit of the original maker, that proposition involves the admission that the intestate made an independent contract, collateral to the original one.    In the nature of things, a person cannot, after a contract has been broken and prohibited (as by the nonpayment of money at the maturity of a note), make himself a party to the original promise.    He may become responsible to make good the original promise; but it can only be by a new and separate undertaking.    It is impossible to infer a promise to pay the note coeval with its date, from a signature put to it eighteen months after.

Suppose the agreement had been, that the intestate signed, on the promise of the payee to forbear for six months, could Mrs. Hall have maintained a suit brought the next day against him as comaker of the note?    If she had waited the appointed time, can

it be doubted that she could have recovered upon a special count setting forth his signature on her agreement to forbear, and that she had waited the appointed time? Thomas *v.* Croft, 1 Strob., 41, 42, 43.

From these propositions it follows that, by signing the note long after its date and maturity, the intestate did not become a maker of the note in the ordinary, usual, legal acceptation of the term ; but that he incurred (if any) a distinct collateral liability. The reason upon which the last considered cases repose is, if a party places his name on a note out of the regular and usual order, but at the time of its inception, he is presumed to participate in the consideration, in the sense that the payee has been induced to part with his money, or other valuable thing, on the strength of his credit and name ; in such cases he incurs a liability, which some of the authorities denominate a guaranty, others a joint promise as surety. But if the name is placed upon the paper after its date and delivery, and without reference to his becoming a party to it, no such presumption arises. It is a new contract. Tenny *v.* Prince, 4 Pick., 386 ; Oxford Bank *v.* Haynes, 8 id., 426, 427, 428. At the common law, the plaintiff relying upon such new contract must prove the consideration.

Much of the argument of counsel has been addressed to the point, upon whom in this case the burden of proof lies. It is argued for Mrs. Hall that the statute places upon the defendant the affirmative. Code 1857, p. 355. The first article defines a promissory note, to be in effect a written promise not under seal, whereby any person, * * etc., "promises" or "agrees" to pay a sum of money, or "acknowledges the same to be due." It is doubtful whether the statute makes any writing for the payment of money a promissory note which would not be such at the common law. It means to declare that if the writing contains the essential requisites, the form shall not be important. At common law, a writing in either of the forms set forth in the statute, or in words of equivalent meaning, is a good promissory note. Story Prom. Notes, § 12. As to the constituent of such paper in

this state, see Gordon *v.* Gibbs, 3 S. & M., 485,; Matthews *v.* Redwine, 23 Miss., 235.

It is not perceived how the question is affected by the statute. It has been shown that the intestate did not participate in the promise of L. Houghton in such wise as to constitute him a co-maker of the note, and that his obligation is such as the circumstances attending its assumption or the agreement at the time made it. In the case of Tiller *v.* Shearer, 20 Ala., 596, referred to by counsel, a majority of the judges held that the defendant who subscribed the note after its maturity bound himself as maker, and places his obligation on the fact that the proof showed this contract to have been founded on a sufficient consideration. That was: "If Brown would forbear to sue the Loftins on the note until about the first of September following, he would sign the note and become liable for its payment after that time, which Brown promised to do; and Tiller subscribed his name immediately before the Loftins."

There can be no doubt that Tiller became liable for the debt on these facts, Brown having given the forbearance; but the mistake was in treating him as the maker of a joint and several note.

Whenever we attain to the conclusion that the intestate is not the maker of the note, but a party to a new and independent collateral contract, the plaintiff, who relies upon it as ground of recovery, must (as in all other cases) show everything necessary to make it valid in law. He must show a consideration *aliunde*, unless the contract be one of the class that imports or implies it. From an examination of many of the cases, aided by the best reflection we can give the subject, we think the intestate became the guarantor or surety of Lafayette Houghton, in the sense that he undertook to pay the debt of Lafayette. No more of this contract is in writing except his signature; but that impliedly authorized Mrs. Hall to write over his signature such a guaranty as is consistent with the facts, which would relieve the contract from condemnation of the statute of frauds. Of the circumstances, we have this extent of information: Mr. Hall, the husband of the payee,

met Lafayette Houghton in Aberdeen during the war and spoke to him about the notes in controversy, and expressed a desire that they should be paid or secured. Lafayette said, on account of the war, he could not then pay, and that there were no other persons to whom at any time he could apply to become his surety except his brothers, but in these war times he would not ask them. Hall proposed that he should go out to the house of his brother James, and ask him to become surety; as all the other notes of his wife were secured, Lafayette assented, and Hall at once started towards James Houghton's house.    James Houghton and Hall are both dead.    No witness was produced to tell what occurred when the parties met.    But the suggestion spontaneously arises that when Hall got to the house, he narrated the interview with Lafayette as explantory of his visit, and requested that he would sign the note as surety, and that he complied.    If A. declares that he is presently going to apply to B. to do a particular thing, upon a certain reason or motive, and B. does it, it is not a strained deduction (in the absence of other proof) that B. acted upon the inducement or representation made by A.    This view of the testimony would tend to the inference that there were no other motives for signing except such as were expressed in the conversation between Hall and Lafayette.

If James signed in response to the application of Hall, as contemplated by him and Lafayette, then there was no new valuable consideration between the parties; if he signed for other reasons, they have not been shown. We have then the signature of James to the paper which conferred a right upon Mrs. Hall to write over it a guaranty to pay the sum of money due upon the note; if the guaranty was assumed upon a consideration, and that is shown, the contract is valid, otherwise it is *nudum pactum.*

In Thomas *v.* Jennings, 5 S. & M., *supra,* Thomas, not being payee, wrote his name on the back of the note, the court held that it required explanatory evidence to determine in what character he meant to be bound; and for lack of such evidence, the judgment was reversed. On the return of the case into the appellate court,

it appeared on the second trial from the evidence that Thomas intended to become a copromisor or maker of the note, having signed before the note was delivered and in pursuance of an agreement.   See same case, 13 S. & M., 620, 621, 622.

So in this case, the place of putting this name upon the paper, in connection with the facts proved, shows that James Houghton meant to bind himself to pay Lafayette's debt, since he could not become maker of the note, and in order to hold him liable at all, he will be charged as guarantor, or as an independent promisor to pay Lafayette's debt.   Hall v. Newcomb, 3 Hill, 233.   If the element of consideration existed he would be liable.   Wren v. Pearce, 4 S. & M., 91.

If there was testimony satisfactory to the jury that Mrs. Hall had never accepted Lafayette's note until James signed it, and that she made his signing as surety a condition to her acceptance, so that the note prior thereto had never been delivered to and accepted by her, then James would be liable coextensively with Lafayette, and the note would have the effect of being payable instantly, or on demand.

The instructions to the jury for the plaintiff, on the question herein first discussed, do not accord with our views of the law, and were calculated to mislead the jury.

The judgment is reversed, and a new trial awarded.