IN RE ESTATE OF M. H. GODDARD,
WHITE, ASSIGNEE OF CHAPMAN'S ESTATE IN
INSOLVENCY, CLAIMANT.

WINDSOR COUNTY, MAY TERM, 1894.

*Nudum pactum.    Order for payment of money.    Promise to maker.    Collateral promise.    Consideration.*

1.  C. contracted to deliver lumber to H., and after the contract had been partially performed G. promised C. to pay him the amount to become due for the lumber.   At that time no consideration moved to G., and the rights of C. and H. were not altered.   *Held*, that the promise was *nudum pactum.*

2.  An order drawn upon a third person in payment of a debt due from the drawer to the drawee is equivalent to a bill of exchange, and if the one upon whom it is drawn promises the drawer to pay it that amounts to an acceptance which insures to the benefit of the drawee, and upon which the drawee may maintain suit in his own name against the acceptor.

3.  The debt from the drawer to the drawee is the consideration for the acceptance and the promise is not collateral.

This was an appeal from the disallowance by commissioners upon the estate of Martin H. Goddard of the claim

of E. J. White, assignee of the insolvent estate of W. H. H.
Chapman.   Heard at the December term, 1893, Windsor
County Court, START, J., presiding, upon a motion by the
appellee for leave to file a plea in offset, and the report of a
referee.   Leave was granted to file the plea in offset, to
which the appellant excepted.   The court then rendered
judgment *pro forma*, disallowing the appellant's claim, and
allowing the claim of the estate upon the plea in offset to
the amount of seventy-two dollars and seven cents.   To the
disallowance of his claim and to the rendering of the judg-
ment upon the plea in offset the appellant excepted.

In March, 1890, one Harris was operating a wood work-
ing establishment in the village of Ludlow, Vt., and pur-
chased of Chapman for use in his business a quantity of
hard wood boards at a given price per thousand feet.   The
boards were to be delivered from time to time, and were to
be paid for as they were delivered.   Under this contract
Chapman began drawing the boards, and after a time ap-
plied to Harris for payment towards the same.   Thereupon
Harris procured of the intestate, Goddard, a check for one
hundred dollars, and passed the same over to Chapman.
Chapman continued to draw the boards and after a further
time applied for an additional payment and received another
check of Goddard for a like amount.   These checks were
both made payable to the order of Harris, were charged by
Goddard to Harris, credited by Harris to Goddard, and
charged by Harris to Chapman.

After Chapman had drawn a considerable part, but not
the whole, of the boards, he and Harris had a looking over,
and it was agreed that Chapman should pay Harris five
hundred dollars in all for the boards which had been deliv-
ered.   The referee found that it was then understood be-
tween Harris and Chapman that no more boards were to be
drawn under the contract.   For the purpose of paying the
balance due Chapman, after deducting the two hundred

dollars already paid, Harris gave Chapman an order upon Goddard for the sum of three hundred dollars.    At that time Goddard had no funds in his hands which belonged to Harris, but it was expected by the parties that he might have.    Neither before drawing the order nor at the time did Harris notify Goddard that he intended to draw such order, nor did Goddard give him any authority so to do.    After the order had been drawn Harris said to Goddard that he had drawn such an order, and Goddard replied that he would pay it sometime.

At the time the contract between Harris and Chapman was entered into Harris was in poor credit.    He was owing Goddard a very considerable sum and Goddard had been in the habit of assisting him from time to time by the way of advances, by discounting the notes which he received for the sale of his products, and sometimes by guaranteeing the payment of his debts for lumber.    This was done by Goddard not because he had any interest in the business of Harris or expected to derive any profit from it, but because he was more likely to receive his own pay if Harris continued business than if he was forced to suspend.

After a part of the lumber had been delivered and after Chapman had received one of the one hundred dollar checks, he applied to Goddard, without the knowledge of Harris, said to him that he was not receiving his pay as fast as he ought, that he feared he might never receive it, and that he should not continue to deliver the lumber unless Goddard would assume the payment of the debt, and thereupon Goddard promised him that he would pay for the lumber.

Chapman never had any conversation with Goddard in reference to the payment of the order ; Goddard never promised Chapman to pay the order, and never promised anybody, in writing, to pay either for the lumber or the amount of the order.

After the lumber had been delivered Chapman applied to

Goddard to pay a note for him to one Morrison, and Goddard promised to do so out of the avails coming to Chapman from the lumber, and did in fact pay the sum of one hundred twenty-three dollars in liquidation of said note. The account presented by the estate in offset consisted of this sum and various other sums charged to Chapman from time to time for disbursements and legal services.

*W. W. Stickney* and *J. G. Sargeant* for the claimant.

The promise of Goddard to pay Chapman for the lumber was an original undertaking and can be enforced, although not in writing. *Green* v. *Burton*, 59 Vt. 423; *Whitman* v. *Bryant*, 49 Vt. 512; *Bayley* v. *Moulton*, 42 Vt. 184; *Blodgett* v. *Lowell*, 33 Vt. 174; *Walker* v. *Hill*, 119 Mass. 251.

The promises by Goddard to Harris that he would pay the order, amounted to an acceptance. *Clarke* v. *Cook*, 4 East 70; *Fisher* v. *Beckwith*, 19 Vt. 31; *Arnold* v. *Sprague*, 34 Vt. 402; *Walker* v. *Sherman*, 11 Met. 170; *Pierce* v. *Kettredge*, 115 Mass. 374.

An acceptance of this sort may be by parol. *Fairlee* v. *Herring*, 3 Bing. 625; *Spaulding* v. *Andrews*, 48 Pa. St. 411; *Wynne* v. *Raikes*, 5 East 514; *Scudder* v. *Bank*, 91 U. S. 406.

It inures to the benefit of, and can be enforced in the name of the drawee. *Bank* v. *Rathbone*, 26 Vt. 19; *Bank* v. *Woodruff*, 34 Vt. 89; *Holmes* v. *Laraway*, 64 Vt. 175.

*Gilbert A. Davis* and *Frank A. Walker* for the appellees.

The verbal statement by Goddard to Harris that he would pay the order did not bind him to do so. *Bewett* v. *Caruthers*, 12 S. & M. 491; *Taxtheimer* v. *Keyser*, 11 Penn. St. 365; 1 Pars. Cont., note to s. 434.

There was no consideration for Goddard's promise to pay for the boards, and it was, therefore, *nudum pactum*. *Nelson* v. *Boynton*, 3 Met. 399: 2 Greenl., Ev., s. 262; *Mallory* v. *Gillett*, 21 N. Y. 412; *Phalan* v. *Stiles*, 11 Vt. 82; *Rix* v. *Adams*, 9 Vt. 233; *Harding* v. *Cragie*, 8 Vt. 501; *Hurlburt* v. *Chittenden*, 26 Vt. 52.

TAFT, J.   Chapman agreed to deliver lumber to Harris, and after a part performance of the contract, Goddard verbally agreed to pay Chapman the amount to become due him for the lumber.   At the time of Goddard's promise, no consideration passed to him, and no change was made in the rights or liabilities of either Harris or Chapman.   The promise was without consideration and cannot be enforced. It is unnecessary to pass upon the question of evidence, for if the promise is established no recovery can be had upon it for the reason stated.

Harris gave Chapman an order upon Goddard for three hundred dollars due him, Chapman, upon the completion of the contract.   This order was equivalent to a bill of exchange, which has been defined to be a letter of request from one to another to pay a third person a certain sum of money.   Goddard accepted the order by parol, promising Harris that he would pay it.   An acceptance may be by parol and may be given the drawer and may be given after the bill is drawn, as in the case at bar.   The acceptance enures to the benefit of the payee.   It is, in its legal effect, a promise to him.   The consideration for the bill in question was Chapman's debt against Harris.   The debt of a third person has always been held to be a sufficient consideration for a bill of exchange.   It logically follows, therefore, that the promise was not collateral and Goddard was bound by his acceptance. The objection to the plea in offset is waived.

*Judgment reversed and judgment for claimant for one*

*hundred thirty-eight and seventy one-hundredths dollars and costs, and ordered certified to the probate court.*

Start, J., being absent in county court, did not sit.