[No. 1886.]

## LEWIN ET AL. v. BARRY.

1. PARTNERSHIP—CONTRACTS—AUTHORITY OF ONE PARTNER TO BIND FIRM.

One partner can bind the firm and his copartners only by such contracts as are within the scope of the partnership business, or so closely related thereto as to permit third parties to lawfully assume the existence of authority to bind the firm, unless there be specific antecedent authority from the copartners, or the contract is ratified by the copartners after it is entered into.

2. SAME—BURDEN OF PROOF.

Where a plaintiff sues on a partnership contract not within the scope of the business of the firm, the burden is on him to prove authority on the part of the signing partner or facts from which a ratification can be presumed.

3. SAME—EVIDENCE—STATEMENT OF SIGNING PARTNER.

The authority of one partner to bind his copartners to a contract not within the scope of the firm business cannot be shown by the statement of the contracting partner, nor can it be presumed because of any collateral or incidental benefit to the firm unless some direct profit has come from the contract which the firm has appropriated.

4. CONTRACTS—GUARANTY—CONSIDERATION.

Where a guaranty of the performance of a contract is made at the time or prior to the execution of the contract, the original consideration of the contract is sufficient to support the guaranty, but where the guaranty is subsequent to the execution of the original contract, there must be some new consideration moving between the parties to bind the guarantor.

5. SAME—EVIDENCE.

In an action upon a guaranty of a contract of lease, where the evidence was conflicting as to whether the guaranty was executed before or after the lease was executed and delivered, and the lessee had taken possession thereunder, it was error to reject evidence offered by the defendant, guarantor, to show that there was no new consideration to support the guaranty.

6. PARTNERSHIP—CONTRACTS—GUARANTY—INSTRUCTIONS.

In an action on a lease contract against the tenant and against a partnership firm as guarantors where the evidence showed that the guaranty was unauthorized by the firm, it was error for the court to funish two forms of verdict, one for the plaintiff and one for the defendants, and refuse at defendants' request to give to the jury

a form of verdict whereby they might find for the plaintiff as against the tenant and in favor of the guarantor defendants.

*Appeal from the District Court of Arapahoe County.*

Messrs. MULLER & WEIL, for appellants.

Mr. JOHN R. SMITH, for appellee.

BISSELL, P. J.

However inequitable the result may appear to be, it is quite plain from the record Mrs. Barry was not entitled to judgment against both the firm of Lewin & Company and Roblyer, the tenant. It is quite possible that in an action properly conceived she may have been entitled to judgment against Lewin & Roblyer, but without other proof than that which she made up on the trial, she could not recover against the firm.

In 1891, John O'Brien was the owner of some premises in Littleton. In May he leased them for a term of three years to Roblyer, who occupied them as a saloon at an agreed rental of $40.00 per month. At some time either before or after possession was taken, and either before or after the lease was executed by the lessor and the lessee, and we do not undertake to determine which, the lease was underwritten with this clause : " I hereby guaranty the payment of the above mentioned rent. Ph. Lewin Co. " The time this guaranty was affixed and signed may be under some circumstances a very important consideration, and the evidence of the circumstances attending it may be of controlling force. We practically make no suggestion about it, leaving it for the jury to determine. Roblyer went into possession and remained there for a little upwards of a year, paying his rent, and then moved out. Shortly after Lewin or Lewin & Company removed the fixtures on which they held a mortgage and the premises were practically abandoned, though the key seems to have been with the widow of Mr. O'Brien who

had died. His widow subsequently remarried. On the conclusion of the term, Mrs. Barry being the widow and the representative, brought this suit against Roblyer and Lewin & Company to recover the unpaid rental for a little less than two years, and she had judgment for somewhat more than $1,200. She was the only witness for herself. The lease was produced and about it there was no dispute, and then she gave evidence to the point that at some time, the date of which was disputed, she took the lease and went as she claims to the place of business of Lewin & Company and showed the lease to Lewin with the guaranty written on it, and asked him if it was all right. We do not need to detail the conversation, it is enough to state that this was the purport of her inquiry and Lewin said it was all right, or at least gave her to so understand. Relying on this assurance matters went along until the premises were abandoned. The plaintiff gave no evidence respecting the authority of Lewin to sign for the firm, respecting the knowledge of the copartner Levy, and made no proof about the business of the partnership from which authority could be presumed to execute a guaranty for the payment of rent. On the conclusion of the plaintiff's case the defendants moved for a nonsuit which certainly ought under this evidence to have been granted. It was denied and the defendants went to proof. They produced evidence to the point that there was no specific authority given to Lewin by the firm or by Mr. Levy to guaranty the rent, and direct evidence to the point that Levy knew nothing about it until suit was begun to collect it. Much evidence was also offered by the defendants to show that the guaranty was not signed until after the tenant went into possession and after the lease had been executed and delivered as a completed contract binding on both the landlord and the tenant. After this proposition had been supported, the defendants then offered to prove that no new consideration passed between the firm and the landlord. This evidence was rejected. When the trial was concluded the court gave the jury two forms of verdict, one for the

plaintiff and one for the defendants. The defendants then asked that a form of verdict be given whereby the jury might if they chose find a verdict for the plaintiff and against Roblyer, the tenant, and for the other defendants. This the court declined to give. This statement very .clearly indicates the errors which inhere in the record.

A learned discussion respecting the law of partnership, the powers of partners and the law of agency which controls in such organizations, would be profitless. It is enough to announce the general rules which control these matters. It is and always has been the law that one partner can bind his copartner only by those contracts which are within the scope of the business of the firm, or so closely related to it as to permit third parties to lawfully assume authority to execute them. It makes no difference that the contract was not within the purview of the business, provided there be specific antecedent authority, or there be proof to show that after the contract has been entered into the copartner has ratified and confirmed what has been done. All the books are clear on this subject and it is only by way of definition and the application of this law to particular states of facts that there has been any modification in the statement of the rule. We do not undertake to state it in its entirety, nor otherwise than with a general sort of accuracy which will not be misleading. It is equally clear that where a plaintiff brings a suit on a contract which is not within the scope of the business of the firm, the plaintiff is bound to offer evidence to show authority on the part of the signing partner or facts from which a ratification can be presumed. The burden is on the plaintiff which must be measurably sustained before she can be permitted to go to the jury. The evidence need not necessarily be direct or positive, but there must be something from which the jury may lawfully have the right to assume the existence of the authority or a subsequent ratification. These matters may not be proven, however, as seems quite clear from the cases by the declarations of the signing partner, who under these circumstances may not bind his copartner by his statements.

This authority cannot be presumed because of any collateral or incidental benefit to the firm unless some direct profit has come from the contract which the firm has appropriated, though whether this may be done without knowledge, it is unnecessary to decide.    This principle is laid down by many cases. It is also clear that where the guaranty is subsequent to the execution of the original contract, there must be some new consideration moving between the parties to bind the guarantors.    If at the time or prior to completion the guaranty be executed, the original consideration would of course be enough.    Brandt on Suretyship and Guaranty, vol. 1, § 18 ; Story on Partnership, § 127 ; *Sweetzer v. French et al.*, 2 Cush. 309 ; *Avery v. Rowell*, 59 Wis. 82 ; *Van Dyke v. Seelye et al.*, 49 Minn. 557 ; *Taft v. Church*, 162 Mass. 527 ; *Shaaber v. Bushong*, 105 Pa. St. 514 ; *Union Nat. Bank v. Underhill*, 102 N. Y. 336 ; *Fore et al. v. Hitson & Reid*, 70 Texas, 517 ; *Wilson v. Williams*, 14 Wend. 158 ; *Columbia Nat. Bank v. Rice et al.*, 48 Neb. 428 ; *Heffron v. Hanaford*, 40 Mich. 305. These authorities might be multiplied indefinitely, but they announce the rules which have established the rights, duties and obligations of copartners with reference to each other and with reference to third persons.    In what have been cited, however, will be found adjudications supporting the several propositions which we have stated.    When once these principles are conceded, it is quite plain that their application to the evidence in the record clearly demonstrates error.    In the first place Mrs. Barry neither proved direct authority on the part of Lewin to sign for the firm, nor did she offer evidence to show that the guaranty was within the usual course of business of the firm, nor did she prove that the business of the copartnership was such that she had a right to presume authority on the part of the copartner to sign the contract. On the other hand from the defendants' testimony, it was well established that Lewin had no authority to sign the guaranty for the firm and bind it thereby, and likewise that Levy, the other member of the firm had no knowledge whatever of the execution of the guaranty, was not a consenting party,

never authorized it, never ratified it, and had no knowledge about it until after the suit was brought to enforce the obligation. Under these circumstances Levy was not bound and the copartnership as such was not obligated, and no verdict ought to have been rendered against the firm, or judgment entered thereon. From the plaintiff's testimony it not only appears that there was no direct authority on the part of Lewin to sign for the firm, but evidence from which the jury must necessarily have found that the matter was not within the scope of the firm's business. Under these circumstances she should have gone nonsuit.

Further than this it is quite clear the court erred with reference to the rejection of proof offered by the defendants to show that there was no new consideration passing between the parties when the guaranty was signed. If we were to pass upon the weight of the testimony, we should probably state that the great preponderance of it lay with the defendants with respect to the time at which the guaranty was executed. How it may be on the subsequent trial we do not know, and therefore our opinion is rested entirely on what appears in the present record, and we go no farther than to suggest it. This is far enough, however, to show that it was a question of fact for the jury to determine when the guaranty was signed, whether before the tenant had gone into possession and the execution of the lease, or whether the guaranty was contemporaneous with the execution and the occupation by the tenant. Should the jury find from the testimony that the tenant had gone into possession, that the lease was executed and delivered before the guaranty was signed, it will be an important and pivotal question for them to determine whether any new consideration passed between the parties, for otherwise the firm would not be bound. The court would not permit the defendant to make proof on this subject. It is quite clear from the instructions the court attempted to correct this error because he gave instructions directly on this point. We do not believe however the instructions were enough to cure the difficulty, because there

was no evidence before the jury on the subject. While the court charged them that there must be a new consideration if the guaranty was signed after the execution of the lease and its delivery, yet there is nothing from which the jury could determine whether there was or was not a new consideration passing between the parties. It was consequently error to refuse the testimony and error which was not cured by the instructions.

The court likewise erred in refusing to give the third form of verdict to the jury, for if the jury found Lewin & Company were not bound on any basis of fact or question of law submitted to them, it was quite impossible for them to render a verdict for the plaintiff and against Roblyer, the tenant, and possibly on proper application dispose of the suit against the firm, leaving it to run only against Lewin and render a verdict against him because he had signed it. It is not at all clear and we are not called upon to decide whether an action will not lie directly against Robyler and Lewin to recover this money, for the reason that Lewin signed the firm name and led the landlord to believe it was a guaranty of the firm. There are cases which hold this doctrine.

During the trial there was evidence offered by the defendant to show that Lewin intended to mislead O'Brien or his wife by the signature, believing that he incurred no legal responsibility because of it. He offered evidence tending to show that he consulted with his brother who was a banker and perhaps a lawyer, who advised him that there was no liability attaching to the signature, because it was after the execution, delivery and occupancy, and there was no consideration. This evidence was objected to, or at least some part of it was, or some of the evidence tending in this direction, and the court remarked to the jury that it was not possible for a defendant to sign a contract of this kind and then attempt to escape liability. This matter is shown by the affidavit of Mr. Levy on the motion for a new trial and is the subject of complaint on this appeal. We do not intend to determine whether this constitutes reversible error be-

cause the other errors are sufficient to reverse the case, but we desire to suggest to the trial court that it is a matter of grave question whether such statements by the court in the presence of the jury are not radically wrong and clearly prejudicial to the defendants against whom the remark is directed. We have no doubt it was an inadvertence but it is a very dangerous one, and will doubtless be avoided on the subsequent trial. It probably cropped out because of the court's impression which we fully appreciate, that there was on the part of Mr. Lewin at least, an evident attempt to mislead the O'Briens, and induce them to make a lease, relying on a guaranty which had no legal or binding force. If the jury should find the facts to be as they were authorized to find them from the testimony, it would look like a piece of very bad faith on the part of Mr. Lewin and very properly subject him to grave criticism.

For these errors which appear on the record and which we have demonstrated, the judgment entered on the verdict must be reversed and the case sent back for a new trial not inconsistent with this opinion.

*Reversed.*