BANK OF CARROLLTON, MISS., v. LATTING.

No. 2479. Opinion Filed February 11, 1913.

(130 Pac. 144.)

1. **PRINCIPAL AND SURETY—Delivery of Note—Consideration.**
The signing of a note as surety, some days after the principal had executed the same, and after the delivery and acceptance thereof, and after the consideration had passed, without any agreement that the surety's name would be secured to the note, is without consideration.

2. **SAME.** When a note has been fully executed and delivered, and, subsequently thereto, a new party signed it as surety, there must be an independent consideration to make it obligatory upon the surety.

3.　BILLS AND NOTES—Indorsement—Consideration.　The defend-
ant's contract (whether it be that of guaranty or suretyship),
having been entered into after the note had once been delivered
and accepted by the payee, and the transaction had become
fully executed, required proof of a distinct consideration to
support it; and, in the absence of evidence tending to establish
a new consideration, the undertaking is **nudum pactum.**

(Syllabus by Sharp, C.)

*Error from Grady County Court;*
*N. M. Williams, Judge.*

Action by the Bank of Carrollton, Mississippi, against R. G.
Latting, Jr.　Judgment for defendant, and plaintiff brings error.
Affirmed.

*Bond & Melton,* for plaintriff in error.
*T. J. O'Neill,* for defendant in error.

Opinion by SHARP, C.　On May 17, 1906, the Carrollton
Cotton Oil Company, a corporation, engaged in the manufacture
of cotton seed products at Carrollton, Miss., was overdrawn in
its account with the plaintiff, the Bank of Carrollton.　On said
day said milling company executed to said bank its demand
note for $948.86; that being the amount of its overdraft.　This
note was signed, "The Carrollton Cotton Oil Co., R. G. Latting,
Jr., Sec. & Mgr." by Mr. Latting, and on the day of its execu-
tion was delivered to the bank.　Latting was at the time a
stockholder in the mill company, and was also its secretary and
manager.　Some ten days after the note was executed and deliv-
ered to the bank's cashier, at the cashier's request, Mr. Latting
signed the note individually.　At the same time it appears that
Latting told the cashier of certain collaterals owned by the
mill company that he would put up as collateral security for the
company's note.　This, however, was not requested by the bank,
but was volunteered by Latting acting for the mill company.
These collaterals consisted of some accounts, and two bills of
lading for two car loads of cotton seed, issued to the mill com-
pany by the Southern Railway Company.　The giving of the
note took up the mill company's overdraft.　This, it appears, was

all the bank at the time required in the way of a settlement of the mill company's indebtedness. As testified to by Mr. Latting:

"The cashier of the bank called my attention to the fact that the mill had overdrawn some $900 or more, and asked me to close it up with a note, which I did."

The transaction between the principal, the mill company, and the creditor, the bank, upon the execution and delivery of the note, thereupon became an executed one, and apparently the bank was satisfied with the manner in which the transaction was closed. It had extended credit to the mill company by permitting it to overdraw its account, and accepted its demand note in settlement of the overdraft. It does not appear that, at the time of the execution and delivery of the note, any request for security in any form was made. The subsequent undertaking of the defendant, Latting, was therefore a collateral one. The indebtedness was that of the mill company. There must, of legal necessity, be a sufficient consideration in order to render valid the contract of suretyship or guaranty. This consideration is usually either of benefit to the principal or surety, or of detriment to the creditor. But where the consideration between the principal and the creditor has passed and become executed before the contract of the surety or guaranty is made, and such contract was no part of the inducement to the creation of the original debt, such consideration is not sufficient to sustain such contract. The rule is a very general one, and authorities in support thereof are manifold. *Briggs v. Downing,* 48 Iowa, 550; *Farnsworth v. Clark,* 44 Barb. (N. Y.) 601; *Simmang v. Farnsworth,* 24 S. W. 541; *Baker v. Wahrmund,* 5 Tex. Civ. App. 258, 23 S. W. 123; *Bluff Spring Merc. Co. v. White* (Tex. Civ. App.) 90 S. W. 710; *Martin v. Stubbings,* 20 Ill. App. 381; *Anderson v. Norvill,* 10 Ill. App. 240; *Davidson v. King,* 51 Ind. 224; *Beall v. Ridgeway,* 18 Ala. 117; *Rudulph v. Brewer,* 96 Ala. 189, 11 South. 314; *Kissire v. Plunkett-Jarnell Grocery Co.* (Ark.) 145 S. W. 567; *Comstock v. Breed,* 12 Cal. 286; *Levorene v. Hildreth,* 80 Cal. 139, 22 Pac. 72; *Lewin v.*

*Barry,* 15 Colo. App. 461, 63 Pac. 121; *Jackson el al. v. Cooper* (Ky.) 39 S..W. 39; *Sawyer v. Fernald,* 59 Me. 500; *Cutler v. Everett,* 33 Me. 201; *Tenney v. Prince,* 4 Pick. (Mass.) 387, 16 Am. Dec. 347; *Ford v. McLain,* 164 Mo. App. 174, 148 S. W. 190; *Macfarland v. Heim,* 127 Mo. 327, 29 S. W. 1030, 48 Am. St. Rep. 629; *Peiffer v. Kingland,* 25 Mo. 66; *Williams v. Williams,* 67 Mo. 661; *Barnes et al v. Van Keuren,* 31 Neb. 165, 47 N. W. 848; *Leonard v. Vredenburgh,* 8 Johns (N. Y.) 29, 5 Am. Dec. 317; *Gilman v. Kibler,* 5 Humph. (Tenn.) 19; *Clark v. Small,* 6 Yerg. (Tenn.) 418; *Russell v. Buck,* 11 Vt. 166; *In re Estate of Goddard,* 66 Vt. 415, 29 Atl. 634; Randolph on Commercial Paper, sec. 920; Brandt on Suretyship and Guaranty, sec. 26; 6 Am. & Eng. Enc. L. 691, 692.

It is insisted, however, by counsel that the transaction of May 17th, together with that which subsequently took place when the note was signed by Latting, constituted a single transaction, and was therefore not completed under the date of the latter occurrence. This contention finds no support in the evidence. That the mill company complied fully with the bank's demand on the day that the note was given is unchallenged. There was no request or agreement on that date that Latting should personally indorse the note, or that the mill company should deposit collateral. It is therefore unnecessary for us to give further consideration to this contention. The note was executed and made payable in the state of Mississippi and the Supreme Court of that state, in *Clopton, Ex'r, v. Hall,* 51 Miss. 482, in a case where the surety signed the note several months after its original execution, said:

"If such indorsement was contemporaneous with the making of the note, it will connect itself with that contract, and will be supported by its consideration; but if subsequent thereto, and not done in pursuance of an agreement for the credit of the maker, and for the security of the payee, it must rest upon a consideration of its own; otherwise it is *nudum pactum. Moies v. Bird,* 11 Mass. 436 [6 Am. Dec. 179]; *Hunt v. Adams,* 5 Mass. 358 [4 Am. Dec. 68]; *Miller v. Gaston,* 2 Hill (N. Y.)

190; *Hough v. Gray,* 19 Wend. (N. Y.) 202; *Leonard v. Sweetzer,* 16 Ohio, 4."

It was there held that the burden of proof as to the consideration of a note rests upon the plaintiff, where it is not by law implied, and that the subsequent signing of a note by a surety, after its delivery, constitutes a separate agreement, and the consideration is not imported by the indorsement itself, but it must be shown *aliunde.* This, we believe, to be the general rule in such cases, when there is an issue as to the consideration. Norton on Bills and Notes, 260; *Pratt et al. v. Hedden,* 121 Mass. 116. Nor does the letter written by the defendant to the bank's cashier, of date August 21, 1906, in any manner affect his liability, as it was as much *nudum pactum* as the note. *Savage v. First Nat. Bank,* 112 Ala. 508, 20 South. 398.

It not appearing that there was any consideration for the defendant's contract of suretyship or guaranty, the judgment of the trial court should be affirmed.

AMES, C., did not participate in the consideration of this cause.

By the Court: It is so ordered.