## TERRY v. GRAVITT et al.

No. 6704. Opinion Filed March 28, 1916.

(156 Pac. 633.)

**TRIAL—Taking Case From Jury—Direction of Verdict.** Where there is a controverted question of a material fact before the jury, it is error for the court to direct a verdict.

(Syllabus by Rittenhouse, C.)

*Error from County Court, Bryan County;*
*J. L. Rappolee, Judge.*

Action by J. E. Terry against Maggie Gravitt and another. Judgment for defendants, and plaintiff brings error. Reversed and remanded for new trial.

*McPherren & Cochran* and *John L. Boland,* for plaintiff in error.

*W. F. Semple* and *Utterback & MacDonald,* for defendants in error.

Opinion by RITTENHOUSE, C. The sole question necessary for determination in this case pertains to the giving of a peremptory instruction, which was given on the theory that Mrs. Maggie Gravitt signed the note under consideration as surety for Johnnie Gravitt after the contract was consummated; it being contended that she was not a party to the original transaction, but in pursuance of a subsequent agreement she signed such note as surety, and that the same was a new and independent contract, which must be supported by a new and independent consideration.

If the evidence in support of this contention had been uncontroverted, the court would have been justified in giving the instruction complained of; but this is not the true condition.

J. E. Terry testified:

"Q. You say you sold it to the Gravitts? A. Yes, sir. Q. Which one? A. Johnnie Gravitt. Q. When you sold it, then you sold it to Johnnie Gravitt? A. Yes, sir. Q. To whom did you deliver possession of that restaurant? A. John Gravitt? Q. That boy? A. Yes, sir. Q. You knew he was a minor? A. Yes, sir. Q. You knew he wasn't 21 years of age? A. Yes, sir. Q. You took his note and mortgage and $85 of money and buggy knowing he was a minor? A. Yes, sir. Q. Then you got your at-

torney to go to his attorney and sign the note? A. He told me his mother would sign his note; that's why I took it. Q. You didn't go to his mother? A. No, sir. Q. You took all this and then sent a lawyer to get Mrs. Gravitt to get her to sign it? You never saw her about it? A. No. sir. Q. You didn't intend to tell the jury you sold to Gravitts, ·you didn't mean Mrs. Gravitt and Johnnie? A. The question was asked, wasn't it? Q. You don't mean to tell them you sold it to Gravitt? A. I sold it to Johnnie and Mrs. Gravitt as surety. Q. After you had gotten all this, she signed it? A. The $85, and he still owed me $15. * * ' * Q. You say now that you thought Mrs. Gravitt signed the note before you turned the restaurant over to Johnnie? A. Yes, sir. Q. Didn't you say the deal was closed up and you got all, and afterwards your attorney took that note to Mrs. Gravitt and got her to sign it? Who had the note and mortgage? A. John Boland. Q. Didn't he have that several days before Mrs. Gravitt signed it? A. I never got it for several days after the deal was made. Q. You left it in Boland's office? A. Yes, sir. Q. But you had turned the possession of this property over to Johnnie long before you got the note? A. Yes, sir. Q. You say you never went to Mrs. Gravitt about the deal at all? A. Yes, sir."

John L. Boland testified:

"Q. You are the same attorney that got Mrs. Gravitt· to sign it? A. Yes, sir. Q. Did she sign it when Johnnie did? A. Yes, sir. Q. After or before she got possession? A. I couldn't tell you. Q. December 3d? A. I drew the mortgage up. Johnnie wanted me to get Mrs. Gravitt to sign it, and she signed it."

Johnnie Gravitt testified:

"Q. Tell the jury how your mother was brought into this trade, and was it before or after? A. I got it. I got her to sign it. A few days after I took possession of the restaurant. * * * Q. Isn't it a fact that you told Mr. Terry that your mother would go in with you and sign

the note? A. I said I would try to get her to. I told him she kinda promised me she would sign, but never said for sure."

Mrs. Gravitt testified:

"Q. Now, with regard to the time he took charge, when did you sign that note? A. One week or ten days. Q. Had he turned over that $85 and buggy and had been placed in charge any length of time before you signed? A. Yes, sir. Q. How did you sign that note? A. As surety. Q. Who brought you the note to sign? A. Mr. Boland. Q. Representing who? A. Mr. Terry."

It will be noted that there is a direct conflict between the evidence offered by plaintiff and that offered by defendants. J. E. Terry, testifying in his own behalf, said that at time of sale it was agreed that Mrs. Gravitt would sign the note, and that was the reason he accepted it; that he thought the note had been signed by Mrs. Gravitt before he turned the property over to her son. His attorney testified that Mrs. Gravitt signed the note when her son did, and that the son wanted him to get his mother to sign the note, which he did. On the other hand, Johnnie Gravitt testified that he told J. E. Terry that he would try to get his mother to sign; that she in a way had promised him that she would; that his mother did not sign the note when he did. Mrs. Gravitt testified that she signed the note a week or ten days after the deal was consummated. There was ample evidence on this question to take the case to the jury, and the court erred in peremptorily instructing the jury.

The rule in this jurisdiction, as laid down in the case of *Bank of Carrolton, Miss., v. Latting,* 37 Okla. 8, 130 Pac. 144, 44 L. R. A. (N. S.) 481, is:

"The signing of a note as surety, some days after the principal had executed the same, and after the delivery and acceptance thereof, and after the consideration had passed, without any agreement that the surety's name would be secured to the note, is without consideration. When a note has been fully executed and delivered, and, subsequently thereto, a new party signed it as surety, there must be an independent consideration to make it obligatory upon the surety."

Under the evidence in this case, it is a question of fact for the jury to determine whether or not the note was signed at the time the transaction was consummated, or in pursuance of the original contract. It is conceded by defendants in error that, if the promise was made in pursuance of the original contract in such a manner that the parting with any property by the obligee depended upon the subsequent signing of the contract, then the contract of suretyship is a valid and subsisting one.

There are two questions in this case which should have gone to the jury: (1) The controverted question of fact as to whether the note was signed at the time the contract was consummated; and (2) if signed after its consummation, whether or not the signature was affixed in pursuance of the original contract.

The judgment should therefore be reversed, and the cause remanded for a new trial.

By the Court: It is so ordered.