**CLEMENTS et al. v. JACKSON COUNTY OIL & GAS CO. et al.**

No. 7998—Opinion Filed Nov. 14, 1916.

(161 Pac. 216.)

**1. Guaranty—Requisites—Consideration.**

A contract of guaranty not entered into at the same time as the original obligation or its acceptance by the guarantee must be supported by a consideration distinct from that of the original obligation.

**2. Contracts—Performance—Impossibility.**

To bring a contract within the rule of impossibility of performance it must appear that the thing to be done cannot by any means be accomplished.

**3. Contracts — Rescission — Grounds — Inability to Perform.**

An allegation that a party to a contract "did not have funds" to make the payments required thereunder is not alone sufficient to support a rescission of such contracts by the other party.

(Syllabus by Burford, C.)

Error from District Court, Jackson County; Geo. C. Crump, Assigned Judge.

Action by W. P. Clements and another against the Jackson County Oil & Gas Company and others. From a judgment sustaining a general demurrer to the petition on behalf of the individual defendants, plaintiffs appeal. Affirmed.

S. B. Garrett, for plaintiffs in error.

Everett Petry, for defendants in error.

Opinion by BURFORD, C. The petition here involved alleged that on the 29th day of October, 1914, the plaintiffs entered into a contract with the Jackson County Oil & Gas Company, a corporation, for the drilling of a deep well. The original contract is attached to the petition as an exhibit. In so far as its terms are applicable here it provided that the plaintiffs in consideration of the transportation of their tools and rig from Electra, Tex., to Altus, Okla., the payment of certain sums of money, and the assignment of an undivided one-half interest in certain leases, should drill a well to a depth of 1,000 feet. The contract further provided:

"It is further and mutually agreed that after the completion of said well to a depth of 1,000 feet if first party shall desire to have said well drilled to a greater depth and shall so notify second parties within two days after the completion to a depth of 1,000 feet, then such additional drilling shall be done on the following terms."

The terms provided were that the Oil & Gas Company should pay $250 for the use of sufficient casing to drill the well to a depth not to exceed 1,500 feet, and $250 more if the well should be drilled to 2,000 feet. The Oil & Gas Company was also to pay for the additional drilling at $3.50 per foot, settlement to be had when the drilling was done, if the well should not go deeper than 1.500 feet. The petition also alleged that the well was drilled to a depth of 1,000 feet, which was reached on or about January 16, 1915, and that payments were then made in accordance with the terms of the contract, and—

"that when the plaintiff reached a depth of 1,000 feet the said Jackson County Oil & Gas Company did not have funds with which to proceed to a lower depth, and did not notify the plaintiff to proceed to drill to a lower depth."

It was further alleged that with the consent of the Oil Company the following instrument in writing was executed by its directors, the individual defendants:

"Know all men by these presents, that whereas the Jackson County Oil & Gas Company, a corporation, entered into a certain contract with W. P. Clements and W. E. Green, bearing date of October 29, 1914, for the drilling of a deep well near the town of Altus, in Jackson county, Oklahoma, to a depth of 1,000 feet, and wherein it was further agreed that said well should be drilled such additional depth as might be required by the Jackson County Oil & Gas Company, and whereas 1.000 feet have been completed and said Jackson County Oil & Gas Company has required the said W P. Clements and W. E. Green to drill said well an additional depth

of 200 feet: Now, therefore, in consideration of the drilling of said well to said additional depth of 200 feet the undersigned directors of said Jackson County Oil & Gas Company do hereby jointly and severally bind and obligate themselves to pay to the said W. P. Clements and W. E. Green the sum of $700 for said drilling as agreed in the original contract above referred to, less the sum paid by the Jackson County Oil Company, upon the contract price of drilling said additional depth of 200 feet.

"Witness our hands this 16th day of January, 1915." (Signatures of Individual Defendants.)

The petition sets out that the well was completed to a further depth of 200 feet, and that no payment had been made, though demanded, except $68 paid by the Oil Company. Prayer was for judgment against the Oil Company for $882, being $700 for drilling and $250 for use of casing, less the amount paid, and against the individual defendants for $700 agreed to be paid in the contract of January 16th. To this petition a general demurrer by the individual defendants was sustained, and plaintiffs, electing to stand upon their petition, bring the cause here for review.

The contract of January 16th is assumed by the parties to be one of guaranty, and will be so considered here. It is so treated in the briefs and in the petition, since the liability of the Oil Company is declared upon, thus negativing the idea that the parties treated the original contract as abandoned and proceeded with the drilling upon a new and independent contract with the individual defendants. The trial court held that from the face of the petition it appeared that there was no consideration for the contract of guaranty made by the individual defendants. We have, with extreme reluctance, in view of the strong moral obligation which, so far as the petition discloses, rests upon the defendants to do what they contracted, come to the conclusion that the decision of the trial court was correct. As was said by Mr. Justice Swayne, in the case of The Harriman, 9 Wall. 161. 19 L. Ed. 629, often quoted since:

"It is the province of courts to enforce contracts—not to make or modify them."

We are not justified in setting aside the established principles of judicial decision and the settled provision of statutory law in order to do what may at first blush appear to be justice in the individual case.

A good consideration is defined by our statute to be (Rev. Laws 1910, sec. 926):

"Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, **to which the promisor is not lawfully en-**

titled, or any prejudice suffered or agreed to be suffered by such person, **other than such as he is at the time of consent lawfully** bound to suffer, as an inducement to the promisor. * * * " (Emphasis ours.)

Section 927:

"An existing legal obligation resting upon the promisor, or a moral obligation originating in some benefit conferred upon the promisor, or prejudice suffered by the promisee, is also a good consideration for a promise, to an extent corresponding with the extent of the obligation, but no further or otherwise."

Referring first to section 927, no legal obligation antedating the execution of the contract of guaranty, such as creating debts beyond the subscribed capital stock or the like, is pleaded, nor does there appear to have been any moral obligation antedating the execution of the guaranty. That arose on the guaranty, if at all, and could not be a consideration for it.

Construing section 926, it seems that in so far as that section is concerned the plaintiffs were already bound to drill the well to an additional depth of 200 feet, upon being notified by the company to do so within two days after the completion of the well to a depth of 1,000 feet, and to wait for their pay for such additional drilling until the additional 200 feet had been drilled. Their promise to do, therefore, what they were already bound to do could not be any consideration for any new or additional promise upon the part of the Oil Company. It was so held by this court in Eastmand Land & Inv. Co. v. Long Bell Lbr. Co., 30 Okla. 555, 120 Pac. 276. Whether or not a promise to perform an existing contract with a third person (in this case the Oil Company) will afford a consideration for the promise of another (in this case the individual defendants)—a question held in the affirmative in England, but much mooted in America (section 9, Cyc. 354, and cases cited)—is, so far as contracts of guaranty are concerned, concluded by our statute. Rev. Laws 1910, sec. 1028, provides:

"Where a guaranty is entered into at the same time with the original obligation, or with the acceptance of the latter by the guarantee, and forms, with that obligation, a part of the consideration to him, no other consideration need exist. **In all other cases there must be a consideration distinct from that of the original obligation.**"

It is apparent that the contract of January 16th was executed long after the original contract was made, and that it must, therefore, be supported by a consideration "distinct from that of the original obligation." Bank of Carrollton v. Latting, 37 Okla. 8, 130 Pac. 144, 44 L. R. A. (N. S.) 481.

No such consideration is shown in the contract or alleged in the petition; indeed, the consideration recited is simply that the plaintiffs will drill the additional 200 feet upon the terms and in the manner in which they originally contracted. It is suggested, however, that the petition shows a right to rescind existing in the plaintiffs at the time the guaranty was executed, and that a waiver of this right was a sufficient consideration to support the contract. This contention must be sustained, if at all, upon one of two allegations in the petition: First, that the Oil Company gave no notice to continue the drilling within the time limited in the contract; or, second, that the Oil Company "did not have funds with which to proceed to a lower depth."

As to the first ground, although it is alleged in the body of the petition that the Oil Company "did not notify plaintiffs to proceed to drill to a lower depth," the guaranty itself, upon which the action against the individuals is and must be based, recites that:

"Said Jackson Oil & Gas Company has required that W. P. Clements and W. E. Green drill said well an additional depth of 200 feet."

Furthermore the petition recited that the well was completed to a depth of 1,000 feet on or about January 16, 1915. The guaranty was executed on that day. At the time of the execution of the guaranty, therefore, the time within which the Oil Company could give the notice to continue had not expired, and no right to rescind or declare the contract at an end for failure to give the notice could yet have arisen.

As to the second ground it has been frequently held in the case of sales of personal property that where the property is yet undelivered the seller may rescind upon the buyer becoming insolvent. Rappleye v. Racine Co., 79 Iowa, 220, 44 N. W. 363, 7 L. R. A. 139; Crummey v. Raudenbush, 55 Minn. 426, 56 N. W. 1113; Anderson v. Read, 106 N. Y. 333, 13 N. E. 292; Diem v. Koblitz, 49 Ohio St. 41, 29 N. E. 1124, 34 Am. St. Rep. 531; Ulman v. Babcock, 63 Tex. 68; Hunter v. Talbot, 3 Smedes & M. (Miss.) 754; Blaxam v. Danders, 4 Barn. & Cress. 941; 35 Cyc. 253, and cases cited. So, too, it has been held with reference to contracts for labor or construction, for which payment is to be made in installments, that a failure and inability to pay an installment will authorize the other party to refuse to incur the possibility of further loss by performing that part of the contract yet executory (Mugan v. Regan, etc., Co., 48 Mo. App. 461; Canal Co.

v. Gordon, 6 Wall. 561, 18 L. Ed. 894; Phillips, etc., Co. v. Seymour, 91 U. S. 646, 23 L. Ed. 341; Bennett v. Shaughnessy, 6 Utah, 273, 22 Pac. 156); but the decisions first above referred to seem to be peculiar to the law of sales, and the plaintiffs do not come within the second line of cases cited, since here there has been no default in any payment due at the time the guaranty was executed. Whether or not the doctrine of these cases should be extended to cases where it clearly appears that a party would be unable to pay the next installment due, it is not necessary for us to decide for the reason that there is no such allegation in the petition. It is not even alleged that the company was insolvent. Nor will insolvency of one party always release the other (Florence Mining Co. v. Brown, 124 U. S. 385, 8 Sup. Ct. 531, 31 L. Ed. 424), for the promisor may be able, regardless of insolvency, to perform the act or make the payment required of him. Thus an individual insolvent might have enough exempt property and funds to complete a contract made by him, or if a bankrupt, his receiver or trustee deeming the contract profitable may elect to carry it out by using available funds, or borrowing by certificate or the like. A simple allegation, therefore, that the Oil Company "did not have funds" is not sufficient to authorize the conclusion that the plaintiffs had a right to rescind under section 984 of the Code, which allows a party to rescind if the "consideration, before it is rendered to him, fails in a material respect from any cause." The allegation is not that the Oil Company was without funds to carry out its part of the contract and could not obtain them. For aught that appears here the company may have had assets upon which it could borrow, it may have had unsold but salable stock, it may have had collectable but unpaid stock subscriptions. If contracts could be repudiated upon the mere allegation that the other party had no funds there would, indeed, be much consternation in the business world, for it is common knowledge that many persons worth large amounts and with extensive borrowing power may be at some times without funds and yet far from insolvent and far from unable to meet their contractual payments. Impossibility of performance must be more definitely stated than was here alleged to authorize a court to say that a right to rescind a contract is given. Nor are we without precedent in these conclusions. Berry v. Wells et al., 43 Okla. 70, 141 Pac. 444, presented stronger allegations of impossibility than the case at bar, but it was held that the contract there involved was not impossible of performance. The rule laid down by Mr. Elliott in his work on Contracts, sec. 224, was there quoted and approved:

"To bring the case within the rule of dispensation it must appear that the thing to be done cannot by any means be accomplished, for if it be only improbable or out of the power of the obligor, it is not deemed in law impossible."

We find no error in the record. Judgment affirmed.

By the Court: It is so ordered