JOHN P. USHER v. OLIVER S. HIATT, et al.

1. PLEADING; *Statement of the Facts, Sufficient; Motion to Make Definite.* Where a petition sets forth a copy of a contract whereby H. & M. are to reset, cultivate and complete for U. a hedge upon three sections of land, and to so cultivate and maintain it in such a skillful manner that the same shall be sufficient to turn orderly stock, and become such a fence as is contemplated by the laws of this state, and so that when completed it will divide the sections of land into quarter-sections, and for the said work, labor, and the maintaining and cultivating of such hedge, U. is to pay H. & M. $1,000 on July 1st 1871, $500 on July 1st 1872, and upon the completion and turning over of the hedge to U., H. & M. are to receive another $1,000, or the third thereof on the completion of the hedge upon a section, as the case may be, and the petition alleges that H. & M. continued during 1871, 1872, 1873, to June 24th 1874, to cultivate, train, plash and furnish plants, as agreed, and that H. & M. performed the said contract and had grown on the land a good fence, such as is contemplated by the laws of Kansas, excepting on *the wet and seepy* ground, and except where U. had destroyed the same, and that there was at the filing of the petition a good and lawful fence of over sixteen miles in length of hedge, on the land, planted and grown by the labor, skill and materials of H. & M., and which said petition further states in detail the acts of H. & M. in performing their contract, that said work, labor, care, diligence and materials are and were when furnished and bestowed of the value of $2,500, the payment of U. by the first $1,000, in August 1871, and the refusal of U. to make any other payments, and sets forth certain acts of omission and commission of U. whereby H. & M. were prevented from completing the hedge as agreed, and the said petition contains the proper prayer for relief: *held,* that the petition states facts sufficient

to constitute a cause of action in favor of H. & M. against U., and that the district court did not err in overruling the motion of U. to compel H. & M. to make such petition more definite and certain, so that it should appear whether H. & M. sought to recover the contract-price for the performance of the contract, or on a *quantum meruit* outside of the contract, as the allegations of the petition were sufficiently definite and certain to fully inform U. of the precise nature of the claim against him.

2. CONTRACT; *Impossible and Absurd Acts, not Required.* A contract, such as above described, does not require the cultivation and maintaining of the hedge on such portions of the ground as were so wet and seepy as to render the growing of a hedge thereon an impossibility, as the law does not require a party to a contract to perform impracticable acts which could not have been expected or contemplated by the parties when the contract was made, and the effort to perform which would be palpably absurd.

3. PROVINCE OF JURY—*Exclusive Judges of Facts, Untrammeled by the Court.* The jury are the sole and exclusive judges of the facts, from the testimony in the case, and the district court has no right upon controverted questions, where there is a conflict of evidence, to suggest or dictate to the jury the answers to particular questions of fact submitted to them for findings thereon; and it is error for a trial court, when the special findings of fact returned by the jury are inconsistent with the general verdict, to take the special findings into its own hands and change materially the purport of such findings, and write other questions and answers thereto, and then submit the same for the signature of the foreman, and thereby make the general verdict and the special findings agree.

4. CONTRACT—*When Severable, and not Entire; Damages.* The contract above stated is a severable one, and not an entire and indivisible one; and *held,* therefore, that if H. & M. were prevented from completing the hedge by the wrongful acts of U., they could recover, and invoke the contract for the purpose of determining the measure of their recovery; and if H. & M. have been guilty of committing a breach of the contract, H. & M. can recover for their part performance, in accordance with the contract-price, but their claim will be subject to all damages resulting to U. from a non-performance of the agreement by them, which would include a consideration of the amount necessary to enable U. to have the contract completed and carried out according to the original intention of the contracting parties.

*Error from Leavenworth District Court.*

ACTION by *Hiatt* and *Maris,* counting on a contract set out in full in the opinion, *infra.* The district court, at the January Term 1875, gave judgment in favor of plaintiffs

for $584.55, and *Usher*, defendant, brings the case here for review.

*John P. Usher*, plaintiff in error, for himself.

*H. T. Green*, for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: The parties to this suit made the following contract:

"It is agreed between John P. Usher, O. S. Hiatt and C. F. Maris, as follows: Said Hiatt & Maris agree to reset, cultivate and complete the hedges upon sections 23 and 24 of township 10, range 22, in Leavenworth county, and section 19, in Wyandotte county, immediately east of said sections, which were undertaken to be grown by A. S. Penfield; to cultivate and maintain said hedges in a skillful manner, until the same shall be sufficient to turn orderly stock, and such as is contemplated by the laws of Kansas relating to hedge fences. The above sections of land belong to said Usher, and the hedge, when completed, will divide these lands into quarter-sections. In consideration of this agreement to construct, and the construction of said hedges for the said Usher, he agrees to and with the said Hiatt and Maris that if they shall have said hedges set and reset in good and proper condition, and in proper cultivation, on or before the 1st day of July next, 1871, the said Usher will pay them at that date one thousand dollars; and if the said parties continue to cultivate and maintain said hedges, as before agreed, said Usher will pay them five hundred dollars on the 1st day of July 1872, and upon the completion and turning over of said hedges to said Usher, he will pay them one thousand dollars, or the third thereof on the completion of the hedge upon a section, as the case may be. If it shall then happen that in consequence of rains the parties cannot put all of said hedges in good condition by the 1st of July next, as above agreed, then said Usher will pay the $1,000, as soon as the hedges are in such condition; and the parties mutually agree with each other, that the said Hiatt & Maris will set and reset and cultivate said hedges as aforesaid without any delay on their part, and said Usher will promptly and faithfully pay them as agreed herein. J. P. USHER, O. S. HIATT, C. F. MARIS.

"*Leavenworth, Kas.*, Nov. 5, 1870."

In the spring of 1871, Hiatt & Maris commenced work on the hedges under the contract, and in August 1871, Usher paid them the first installment of $1,000. Differences having arisen between the parties as to the performance of the contract by Hiatt and Maris, and no other payment being made by Usher, on 24th June 1874 the defendants in error brought suit against the plaintiff in error to recover the other $1,500 mentioned in the contract, with interest on $500 from 1st July 1872. Plaintiffs in the court below, after setting forth the contract mentioned, stated among other things in their petition, "that they continued during 1871, 1872, 1873 and 1874, to the date of said petition, to cultivate, train, plash, and furnish plants, as they had agreed, and the defendant had full knowledge of what they were doing, and made no objection thereto, and that they performed their said contract; that they had grown on said land a good fence, such as is contemplated by the laws of Kansas, and except in the wet and seepy ground, and where the defendant had destroyed the same, there was at the commencement of the suit, a good and lawful fence, over sixteen miles in length, planted and grown by their labor, skill and materials; and but for the acts and omissions of Usher, all of said fence would at the filing of the petition have been completed as was agreed; that said work, labor, care, diligence and materials are and were, when furnished and bestowed, of the value of $2,500; that said Usher did not keep and perform the contract and promises on his part; that he did not protect the hedges after July 1st 1872, nor did he keep said hedges fenced as agreed; that he rented the lands on which the hedges were being grown to some sixteen tenants, and erected tenement houses, and constructed cattle and horse lots, upon and across the line of hedges, and that stock were confined in said lots near many of the tenant houses; that Usher, since 1872, had placed large herds of cattle, horses, and hogs on three quarter-sections, on which there were then growing good and thrifty hedges, and without protecting said hedges; and without the fault of plaintiffs, said animals trampled over and

ate the young cultivated and tender growth of each year, whereby said hedge is not a fence; that said Usher by his sons and tenants, who were his agents duly authorized, cut down the hedges and made wagon-and-cattle ways through and across the various lines of hedge; that said Usher did in the beginning require his tenants to protect said hedges, but since 1873 said Usher and his tenants had permitted the fire to destroy about two miles of good fence agreed to be protected, whereby its growth was destroyed; and finally, in May 1874, said Usher commenced plowing said hedge where his stock had destroyed it, and in some places where said hedge had been turned out, and was a good and lawful fence, protecting the crop of defendant; and then that said Usher wholly refused to pay any sum, and claimed that Hiatt and Maris had not fenced the land, and that he should not pay any sum for what had been done, and wholly repudiated and denied that Hiatt and Maris had any demand or right to any pay on account of the contract, work, labor, care, diligence and material furnished. Defendant Usher filed an answer, also setting up the contract, and denied any bad faith upon his part, denied any wrongful acts by him, either of omission or commission, and alleged a non-performance of the contract on the part of Hiatt and Maris, and claimed damages on account of breach of contract by Hiatt and Maris, and their actions in the premises of $5,000. On the general verdict of the jury, and the findings of fact, as finally returned by the jury, with the aid and direction of the court, judgment was rendered against Usher for $584.55. The jury, also, returned the following answers to certain questions submitted by Usher, viz.:

*Question 1.*—Did they, the plaintiffs, continue to properly cultivate and maintain the hedge until July 1st 1872? *Ans.*—No.

*Ques. 2.*—What is the value of the hedge plants furnished, and labor bestowed, by the plaintiffs, in cultivating the hedge where practicable to cultivate and grow the same? *Ans.*—Don't know.

*Ques. 3.*—By what time ought the plaintiffs to have com-

pleted the hedge, so as to be sufficient to turn stock? *Ans.*– Don't know.

*Ques. 4.*– If you find they hadn't done so, by what time, after waiting a reasonable time for plaintiffs to complete it, could defendant complete it himself? *Ans.*– Don't know. None.

*Ques. 5.*– During the interval between such times, what damage did or will defendant suffer in consequence of the hedge being insufficient? *Ans.*– None. Don't know.

*Ques. 6.*– Or, during such interval, by loss of rental, or other direct consequences of plaintiffs not completing their contract? *Ans.*– None.

*Ques. 7.*– What would be the cost of constructing a fence to take the place of the hedge at points wherein the plaintiffs have not attempted the growth of any hedge? *Ans.*– Don't know.

The transcript then states that—

"The jury having been out for about twenty-four hours, and their answers being as above, the court entered into a colloquy with the jury which resulted in the court taking the verdict into its own hands, and striking out the answer of the jury to the second question, and writing for the answer of the jury thereto, '$584.55 in addition to the $1,000 paid by the defendant in August 1871.' The court also struck out the answer of the jury to the third question, and wrote thereunder, 'Five years from date of contract.' The court also struck out the answers of the jury to the fourth question, and wrote thereunder, 'By May 1876.' The court also struck out the last two words of the answer of the jury to the fifth question. The court also struck out the answer of the jury to the seventh question, and wrote thereunder, 'There were no such places, except where the hedge crossed running streams.' And the court at the same time wrote the following questions and answers thereto:

"*Question:* Did the defendant take possession of the hedges, and put an end to the contract? *Answer*—Yes, about the first of May 1874.

"*Question:* Did the plaintiffs continue to cultivate the hedge up to May last? *Answer*—Yes, but not as well as they should.

Which questions and answers were submitted to the jury, and the jury without retiring or consultation, other than as above stated, signed the same by their foreman, which the court received as the verdict of the jury, and discharged them."

I. The first alleged error is, the action of the court in overruling the objection of Usher to the introduction of any evidence. The objection seemed to be based mainly upon the admission in the petition that there was no hedge grown "in the wet and seepy ground," and that hence Hiatt and Maris had not performed their part of the contract. The petition stated facts sufficient to constitute a cause of action, and the court committed no error in allowing evidence to be introduced in the case. The contract did not require the cultivation and maintaining of a hedge in running streams, nor in such portions of the ground as it was impracticable to grow a hedge. The law does not require a party to perform impossibilities or impracticable acts, which could not have been expected or contemplated by the parties when the contract was made, and the effort to perform which would be a palpable absurdity. As the petition shows that there was no willful departure from the terms of the contract, or any omission in essential points by Hiatt and Maris, and as they claimed therein they had fully performed the contract in all its material and substantial particulars, the law will not hold that they forfeited their right to compensation by reason of mere technical, or unimportant omissions, or their failure to grow successfully the hedge on the wet and seepy ground.

*The law never requires an absurdity nor an impossibility.*

II. Pending the trial the defendants in error amended their petition by inserting, "and said plaintiffs aver that said work, labor, care, diligence and materials are and were when furnished and bestowed of the value of $2,500;" and thereupon plaintiff in error moved the court to require Hiatt and Maris to make their petition more definite and certain, so that it might appear whether they sought to recover the contract-price for the performance of the contract, or on a *quantum meruit* outside of the contract, and that in default of such amendment, defendant have judgment on the pleadings. The motion was overruled, and the plaintiff in error now complains of such ruling; and in support of his complaint says:

*Facts to be pleaded. Motion to make definite.*

14—18 KAS.

Usher v. Hiatt.

"It will be seen that by the decision of the court in overruling defendant's motion, the plaintiffs had a sort of a double-barreled affair. In the same paragraph of their petition they are claiming to recover on a contract performed, and for work and labor bestowed in performing such contract. The action of the court permitted the plaintiffs to have an undue advantage. The court ought to have required plaintiffs to have tendered the issue directly upon the performance of the contract, or upon the *quantum meruit*. *This was error.*"

We cannot agree with the learned counsel. By the code, the rules of pleading heretofore existing in civil actions have been abolished. Technical issues have been set aside. Where the plaintiff claims he has a right of action against a defendant, he must state the facts in his petition on which he grounds his right of action. These are to be stated in ordinary and concise language, and without repetition. The defendants in error having set forth, within the meaning of the code, a statement of the facts constituting their cause of action, and as the allegations of the petition were sufficiently definite and certain to fully inform the plaintiff in error of the precise nature of the charge against him, the court committed no error in refusing to compel them to inform him whether they were seeking to recover the contract-price for the performance of the contract, or on a *quantum meruit* outside of the contract.

III. The jury retired to consider of their verdict on the 3d of December 1874, and the next day returned into court with a verdict as follows: "We the jury find for the plaintiffs the sum of $500, with interest from July 1st 1872"—and reported that they were unable to agree upon the questions submitted by the court to be answered by them. The court thereupon instructed them to return a verdict for the amount of $500, and to include the interest from July 1st 1872, and ordered the jury to retire and bring in the verdict as directed, and to answer the questions submitted. The jury on the same day rendered the following verdict: "We the jury find for the plain-

3. Province of jury.

tiffs, and assess their damages at the sum of $584.55"—and the questions were answered as before stated.

Under the contract Hiatt & Maris were to have $500 on July 1st 1872, in addition to the prior sum of $1,000 paid in August 1871, if they continued to cultivate and maintain the hedge as agreed upon until that time, not otherwise. In their findings upon the questions of fact, the jury in answer to the question, "Did they, the plaintiffs, continue to properly cultivate and maintain the hedge until July 1st 1872?" said *No;* and to the question, "What is the value of the hedge plants furnished and labor bestowed by the plaintiffs in cultivating the hedge, where practicable to cultivate and grow the same?" answered, "Don't know." If these findings had been permitted to stand, the judgment, subsequently entered upon the general verdict, would have been inconsistent therewith. It is evident that the jury intended the verdict of $584.55 to be for the installment due July 1st 1872, with the interest on the $500, from that date; but as they found that Hiatt & Maris had not properly continued to cultivate and maintain the hedge until that time, the $500 could not have been due on July 1st 1872, and hence the verdict of $500, with interest thereon from July 1st 1872, could not be supported on said findings. It appears however that the court below must have noticed the difficulty of rendering judgment for the $584.55 in opposition to the said special findings of fact, as it thereafter changed the answers as above stated, and also wrote the two additional questions and answers set forth in the statement of facts of the case. The answers thus changed were very material, and the new questions of fact, with the answers written by the court, were equally important. The evidence as to the findings of fact returned by the jury, prior to the changes made by the court in the verdict, is not brought here with the record, but it seems to us impossible that the evidence on the particular questions submitted to the jury, and the answers which were afterward modified by the court, was all one way, as the jury, after having been out about twenty-four hours, answered to the

question, No. 2, "don't know," and this answer was changed by the court to, "$584.55, in addition to the $1,000 paid by the defendant in August 1871."

As to the question, "Did the defendant take possession of the hedges, and put an end to the contract?" and, the answer thereto written by the judge, the record presents all the evidence, *pro* and *con.* It makes over twenty pages of manuscript; and after reading it carefully, we cannot say that the answer is conclusively proven. If the question was a proper one to have been submitted under the pleadings, the jury should have been permitted to have taken it to their jury room, and to have then passed upon it, free from any order, influence, or intimation of the court. The act of the court in writing the interrogatory respecting the taking possession of the hedge, and the answer of the jury, was not justified by the record, and was manifest error. The evidence is not all one way upon the point, and there was in fact no submission of the question to the jury. The jury already had had several of their answers erased, changed and modified by the court; and when, under such circumstances, the court wrote out the question and answer, and handed them to the jury, the latter body only obeyed the direction of the court in signing the same through their foreman. There was no fitting consultation, no retiring to deliberate thereon, no real agreement thereto. The dictation of the court was as patent as if an order had been issued, requiring the facts to be found by the jury according to the *dicta* of the court. The only matter causing serious trouble in the case, owing to the condition of the record, is, whether the action of the court, in thus presenting to the jury the question and the answer already written, affected the substantial rights of the party complaining. As the jury originally returned their verdict for the full amount of the second installment, with interest from July 1st 1872, and afterward, upon the changes and modifications of the court, to undo the fatal finding of the jury under which said sum was not due on July 1st 1872, a verdict was rendered

upon the basis that the value of the hedge plants furnished and labor bestowed by the plaintiffs in cultivating the hedge to the commencement of the suit (not including the payment of $1,000) was the like sum of $500, with interest from July 1st 1872, we cannot say but that the rights of the petitioner in error were prejudiced. It is certain, the verdict was transformed from the money supposed to be due, in the first general verdict, July 1st 1872, to the value of the plants and services of Hiatt and Maris; and in this change the jurors acted as automatons, directed by the will of the court. It is impossible to come to any intelligent conclusion, from a review of the action of the jury and court, upon what facts the judgment was supported. The trial of the case in the court below seems to have taken about sixteen days' time; and as one of the parties suggests, "the court was doubtless weary of the cause, and felt justified in taking effective measures to dispose of it." Perhaps substantial justice would be accomplished by allowing the judgment to stand, but upon the exceptions taken, we have no right to sanction the errors committed, and must therefore reverse the judgment.

IV. To facilitate the proceedings in another trial, we make additional comments. In the court below, and in this court, the plaintiff in error insisted and still insists, that the contract sued on was entire and indivisible. We 4. Contract—when severable. are of a different opinion. The contract made provision for the payment of $1,000 on July 1st 1871, upon certain work being done and material furnished; then $500 to be paid on July 1st 1872, when additional work was done; and upon the completion and turning over of the hedge, the remaining $1,000, or the third thereof, on the completion of the hedge upon a section, as the case might be, was to be paid. Within the authorities the contract was a separable one, and Hiatt and Maris became entitled to the various installments named therein, if at the dates thereof they had complied with their part of the contract. If they have been prevented by the plaintiff in error from completing the hedge, by acts of omission or commission, they can

recover, and invoke the contract for the purpose of determining what the measure of their recovery shall be; and if it be admitted that there was a breach of the contract by Hiatt and Maris, they can also recover for their part performance, in accordance with the contract-price, but their claim would be subject to any damages resulting to the plaintiff in error from a non-performance of the contract by them. We use, in this connection, the word "damages," in its broadest sense. It would include a consideration of the amount necessary to enable Usher to get the contract completed and carried out according to the original intention of the contracting parties.

Other errors are alleged, but as they may not arise in a new trial of the case, we do not think it necessary to refer to them.

The judgment will be reversed, and the case remanded for a new trial.

All the Justices concurring.