## BERRY v. WELLS *et al.*

### No. 3364. Opinion Filed June 9, 1914.

### (141 Pac. 444.)

1.  CONTRACTS—Improbability of Performance—What Constitutes —Defense. This suit was instituted for the purpose of foreclosing a mortgage lien upon certain property securing an indebtedness of $10,700. The court found that the note and mortgages were executed in consideration of the settlement and dismissal of a certain suit filed by plaintiff and others against defendants, asking for the appointment of a receiver over certain corporate property controlled principally by defendant W., and the further consideration of the sale and agreement to transfer by plaintiff and others 107 shares of stock in the W. S. P. Co., of which company said W. was president and general manager; that fifteen shares of said stock were held by two minor children of said plaintiff; and that 25 shares, owned

by B., who was a party to said contract of sale, had been hypothecated by said B. to secure a debt of $2,500. The trial court rendered judgment in favor of defendants on the ground that said contract was impossible of performance. Held, the court committed prejudicial error.

2. SAME. The facts found by the court do not bring the contract involved within the rule of impossibility of performance. Difficulty or improbability of accomplishing the undertaking will not excuse non-performance; it must be shown that the undertaking cannot by any means be effected.

3. APPEAL AND ERROR — Contracts—Impossibility of Performance — What Constitutes — Defense—Determination on Appeal— Amendment at Subsequent Trial. Plaintiff's suit was based upon a promissory note and mortgages securing same. Defendants pleaded as a complete defense a contract executed at the time of the execution of the note and mortgages by plaintiff and associates with the defendants. By said contract, defendants pledged the 107 shares of stock to plaintiff as additional security to said note, to be held until defendants should pay $2,500. Upon payment of said amount, plaintiff agreed to deliver all of said stock to defendants. Defendants failed to pay or tender said $2,500. Held, under the facts shown by the record, said contract failed to constitute a complete defense. Held, further, that upon another trial, the parties should be given an opportunity to amend their pleadings, to the end that the court may adjust the rights of the parties and administer equity as indicated in this opinion.

(Syllabus by the Court.)

*Error from District Court, Creek County;*
*Wade S. Stanfield, Judge.*

Action by I. K. Berry against M. B. Wells and others. Judgment for defendants, and plaintiff brings error. Reversed, with directions.

*John G. Ellinghausen* and *McDougal & Lytle,* for plaintiff in error.

*J. F. Lawrence, J. B. Rutherford,* and *W. G. Fairchild,* for defendants in error.

RIDDLE, J. The parties will be referred to in this court as they were in the trial court. Plaintiff, I. K. Berry, filed his amended petition in the district court of Creek county on November 1, 1910, against M. B. Wells and Mary E. Wells, to foreclose a mortgage lien upon certain real estate and personal prop-

erty securing an indebtedness of $10,700. The petition is in the usual form, with an allegation that on the 23d day of September, 1910, defendants pledged with plaintiff 107 shares of capital stock of the Wells-Sapulpa Packing Company, a corporation, of Sapulpa, upon agreement that when defendants paid said promissory note the same should be returned to defendants and the claim thereon released. Prayer was for judgment for the amount sued for, with attorney's fees, and that the mortgage liens on the real and personal property and the lien upon the pledged property be foreclosed. A copy of the note and mortgages was attached to the petition.

Defendants filed their answer, in which they admit the execution of the note and mortgages. They allege that at the time of the execution of said note and mortgages a written contract was made between defendants and plaintiff and his associates, Joseph Bruner, F. S. Westfall, Theo. Berryhill, Lafe Speer, M. G. Berry, and Ruby Berry; that in making said contract Calloway & McGraw and J. G. Ellinghausen were attorneys and agents representing parties of the second part; that said note and mortgages sued upon were executed with the belief that said attorneys did in fact represent all of said parties named, when in truth said attorneys acted outside and beyond their scope of authority from all of said parties mentioned. For a second defense, they allege that by the terms of said contract it was agreed that defendants were purchasing from said first parties 107 shares of stock in the Wells-Sapulpa Packing Company, for which these defendants made and executed the note and mortgages hereinbefore referred to for the express consideration of $10,700; that by the terms of said contract defendants agreed to place said stock as collateral security for the payment of said note and mortgage in the hands of plaintiff; but that, on account of noncompliance by said plaintiff, defendants were thereby prevented from so placing the aforesaid stock as collateral. They further allege that they complied with their part of said contract, but that said plaintiff neglected and refused to comply with said contract or any part thereof; that said plaintiff and first parties to said contract, contrary to its terms, failed and refused to surrender or turn over

to defendants any of the shares of stock and they failed and refused to effect any transfer upon the books of said company; that 25 shares of said stock belong to one Theo. Berryhill; that, at the time the contract was entered into, said Berryhill had hypothecated said stock to secure an indebtedness, which said 25 shares of stock were held by the Farmers' & Merchants' Bank of Trenton, Ill., as such collateral security; that no consideration passed for said note and mortgages. As a third defense, they allege that the execution of said note and mortgages was secured by coercion and intimidation, and set out in detail the facts constituting such coercion and intimidation. They allege there was no consideration for the execution of said note and mortgages; failure of plaintiff and his associates to comply with the contract set out; that the execution was obtained by coercion and intimidation; and pray judgment. A copy of the contract is attached to the answer as an exhibit, and will be referred to hereafter.

Plaintiff filed his reply to the answer, alleging that he was the owner of 39 shares of stock sold to defendants in the Wells-Sapulpa Packing Company; that Joseph Bruner owned 20 shares; F. S. Westfall, ten shares; Theodore Berryhill, 25 shares; Lafe Speer, two shares; M. G. Berry, ten shares; Ruby Berry, one share; that defendant M. B. Wells was the president and general manager of said company; that on the 29th day of August, 1910, plaintiff, together with said shareholders, excepting Ruby Berry, instituted a suit in the district court of Creek county against said Wells-Sapulpa Packing Company, praying for an order requiring said corporation to permit said stockholders to inspect the various books and records, and to restrain said corporation, its officers and agents, from issuing any more stock, or making transfer thereof, and praying for the appointment of a receiver for said corporation, and to cancel a vast amount of stock defendant had issued to said M. B. Wells and other persons; that defendants in said action, Wells-Sapulpa Packing Company, employed counsel, and after several hearings, on September 23, 1910, defendant M. B. Wells entered into an agreement to dismiss the action, which agreement is attached to said answer; that it was agreed therein that in consideration of a dismissal of said

action by plaintiff and the other stockholders, owners of the 107 shares of stock in said corporation, and for the consideration of $10,700, the face value of said shares of stock, the said M. B. Wells agreed to and did deliver to plaintiff the promissory note and mortgages sued upon; that defendants and each of them have wholly failed to pay to plaintiff any part of said note.

The finding of the trial court, so far as material here, is as follows:

"The court finds from the testimony in this case that said contract was executed for the purpose of settling the matter then in court, to wit, an application for a receiver, and in pursuance of the dismissal of said application for receiver; that the contract was a contract for the purchase of 107 shares of the capital stock of the Wells-Sapulpa Packing Company; that of said 107 shares, about fifteen shares were the property of minors for whom no guardian had been appointed and who were not in court by guardian or by an attorney, or any one legally authorized to represent their interests in court; that about 25 shares of stock belonged to Theodore Berryhill and had been hypothecated and which it was not within the power of Theodore Berryhill to deliver; that none of the stock was ever, at any time, delivered to the defendant M. B. Wells, and by him redelivered to the plaintiff or to those for whom he sues in this case. The court further finds that the contract sued upon in this case was executed as an entirety for the purpose of settling the entire controversy involved in said action; that there has never been a time since the execution of said contract, on the part of the plaintiff and those for whom he sues in this case, that he could have executed it; that, under the evidence in this case and the contract sued upon, the plaintiff is not entitled to recover for the reason that said contract was incapable of execution and the delivery of stock in said contract was incapable of being performed. The court therefore finds in favor of the defendants, and the note and mortgage sued upon in this case is ordered canceled, and the property taken under writ of replevin in this case will be ordered returned to the defendants."

Judgment was rendered in favor of defendants, dismissing plaintiff's petition, from which judgment plaintiff appeals. He assigns for reversal of this judgment, among others, the following alleged errors: (1) Said court erred in overruling the mo-

tion of plaintiff in error for a new trial. (3) That said findings of the court were contrary to law and the evidence. The view we take of this case requires the consideration of only the first and third assignments of error, *supra*. The contract which the court referred to and held to be impossible of performance is as follows:

"This agreement, made and entered into this 23d day of Sept. 1910, by I. K. Berry, F. S. Westfall, Joseph Bruner, Theodore Berryhill, Lafe Speer, Manville G. Berry and Ruby Berry, of the first part, by their attorneys, Calloway & McGraw, and John Ellinghausen and M. B. Wells, of the second part: Whereas, the parties of the first part are the owners of the following number of shares of capital stock of the Wells-Sapulpa Packing Co., and own the numbers of shares respectively set opposite their names here below, to wit: Joseph Bruner, twenty shares. F. S. Westfall, ten shares. Theodore Berryhill, 25 shares. Lafe Speer, two shares. I. K. Berry, 39 shares. Manville G. Berry, ten shares. Ruby Berry, one share. Whereas, said party of the second part has purchased from said parties of the first part their aforesaid shares of stock for the consideration of ten thousand seven hundred dollars ($10,700.00) evidenced by this promissory note bearing date, Sapulpa, Okla., Sept. 23, 1910, payable three months thereafter to the order of I. K. Berry with interest thereon at the rate of ten per cent. per annum from date thereof. And whereas, the party of the second part has pledged with the said I. K. Berry the aforesaid shares of stock as collateral security for the payment of said note according to the terms and conditions thereof: Now, therefore, it is agreed between the parties hereto that if the said M. B. Wells shall, before the maturity of said note, pay to the said I. K. Berry or order the sum of twenty-five hundred dollars ($2,500.00) as a credit and payment to apply upon said note, then the said I. K. Berry shall forthwith deliver unto the said M. B. Wells the aforesaid shares of stock, and the same shall be released as such security and the title thereto shall vest absolutely to the said M. B. Wells. Witness the hands of said parties the day and year first above written. Joseph Bruner, F. S. Westfall, Theodore Berryhill, Lafe Speer, I. K. Berry, Manville G. Berry, Ruby Berry, Parties of the First Part, by Calloway & McGraw & John Ellinghausen, their Attorneys and Agents. M. B. Wells, Party of the Second Part."

It is well to keep in mind that this suit was instituted upon the note and mortgages securing the same, and not upon the contract which the court held was impossible of performance; but this contract was pleaded by defendants as a defense and as a discharge from any liability upon the note and mortgages. Upon the facts found, the court fell into an error of law in holding that the contract pleaded by defendants was impossible of performance. If the court was correct in this declaration of law, and in the further conclusion reached by the court, that the contract was not divisible, then the judgment should be affirmed; otherwise, reversed. Our only inquiry is: Was the contract referred to impossible of performance? The reason assigned by the court why such contract was impossible of performance was that about fifteen shares of said stock sold and contracted to be delivered to defendants were held by minors, and that 25 shares which were sold had been hypothecated to secure an indebtedness of $2,500. These facts do not bring the contract in question within the rule governing the impossibility of performance of contracts. The rule laid down by Mr. Elliott, in his work on Contracts (section 224), is stated as follows:

"Impossibility of performance of the consideration does not necessarily relieve the promisor from his liability on the contract. Mere difficulty, or expense, is not such an impossibility as will relieve the promisor from liability on his contract. If the covenant be within the range of possibility, however absurd or improbable the idea of execution may be, it will be upheld, as where one covenants it shall rain to-morrow, or that the Pope shall be at Westminster on a certain day. To bring the case within the rule of dispensation, it must appear that the thing to be done cannot by any means be accomplished; for, if it be only improbable or out of the power of the obligor, it is not deemed in law impossible."

It was said by Mr. Justice Swayne, in the case of *The Harriman*, 9 Wall. 161, 19 L. Ed. 629:

"In *Pardine v. Jane* [Alleyn 26], the court said: 'When the party by his own contract creates a duty or charge upon himself he is bound to make it good if he may, notwithstanding any accident by inevitable necessity, because he might have guarded against it by his contract.' Such has always been

the rule of the common law. If a lessee covenant to repair, and the house is burned down, he is bound to rebuild. If a party covenant to build a bridge and keep it in repair for a specified time, and it be swept away by an extraordinary flood before the time expires, he must replace it. A party agreed to secure in England for another the exclusive right to make, use, and vend in the Canadas a machine covered by a patent from the United States. It was found that this could only be done by an act of the British Parliament. As such a grant, however improbable, was not impossible, it was held that the case was within the rule laid down in *Paradine v. Jane,* and that the covenantor was liable for the breach of his agreement. * * * The principle deducible from the authorities is that, if what is agreed to be done is possible and lawful, it must be done. Difficulty or improbability of accomplishing the undertaking will not avail the defendant. It must be shown that the thing cannot by any means be effected. Nothing short of this will excuse nonperformance. The answer to the objection of hardship in all such cases is that it might have been guarded against by a proper stipulation. It is the province of courts to enforce contracts—not to make or modify them. When there is neither fraud, accident, nor mistake, the exercise of dispensing power is not a judicial function."

It is clear from the foregoing authorities that had a suit been instituted by defendants against plaintiff upon the contract which the court held to be impossible of performance, and had plaintiff pleaded the matters which the court assigned as a barrier to the performance of the contract, this would not have been a legal excuse for nonperformance. It will be seen that Berryhill, a party to the contract, sold and agreed to deliver to defendants the 25 shares which the court found had been hypothecated and by reason of which the same could not be delivered. The delivery of these shares does not appear, as a matter of fact—and certainly not as a matter of law—to be impossible. The other reason assigned by the court making the contract impossible of performance was that fifteen of the shares were owned by plaintiff's minor children. These minors were likewise parties to the contract, and plaintiff, as the father of the minors, also undertook to make good the contract for the minors. A minor's contract

is only voidable, and not void. Under section 4072, Rev. Laws 1910, an assignment of a negotiable instrument by a minor is specifically authorized and passes title. Whether or not this has any application to the character of property now under consideration is unnecessary to determine. It is simply cited as an illustration to show that the contract under consideration is not impossible of performance. The statute authorizes the sale of any property, either real or personal, owned by a minor; and, although there might be difficulty and obstacles tending to hinder or prevent a sale, yet these things by no means render such contract of sale impossible of performance.

There is no fraud or misrepresentation alleged in making this contract, other than coercion and intimidation. Upon this issue, however, the court found against defendants, and this question is not now before us. The court specifically found that part of the consideration for the execution of the note and mortgages sued upon was the settlement and dismissal of a certain suit for the appointment of a receiver of the packing plant, in which defendant M. B. Wells was materially interested, which suit was dismissed. It would certainly not be just and equitable to permit defendants to be wholly relieved of all liability upon the note and mortgages sued upon, after having received the benefits resulting therefrom. The contract that the court held impossible of performance specifically provides that defendants should pay $2,500 before the maturity of the note sued upon, and that upon the payment of said amount plaintiff agreed to deliver the 107 shares of stock to defendants. Until this amount was either tendered or paid, plaintiff was under no obligation to deliver any of said shares to defendants. The contract, as a matter of law, not being impossible of performance, defendants had no right to assume that plaintiff in no way could comply with the conditions which he undertook to perform, and thus breach said contract in failing to tender or make payment as agreed. This contract was pleaded by defendants as a complete defense to plaintiff's cause of action, and defendants, having breached the conditions of said contract which were conditions precedent to be performed

by them before plaintiff was required to deliver any of said shares of stock, certainly should not be permitted to plead and rely upon said contract as a complete defense to plaintiff's cause of action.

We are not prepared to say that plaintiff should recover the full amount of the indebtedness evidenced by the note and mortgages; yet, upon a reversal of this case, the trial court should permit the parties to reform their pleadings, if they so desire, in such manner as to warrant the court in administering substantial justice and equity between them. Should it be found that plaintiff failed to deliver any number of the shares of stock sold to defendants, or should it be shown that he has placed himself in a position which would make it impossible for delivery of any of said shares, or should any portion of the consideration for the execution of the note and mortgages sued upon be shown wanting, these issues may be presented to the trial court upon another trial, and the equities of the parties be adjudicated.

The trial court committed error in holding that the contract pleaded by defendants as a defense to plaintiff's cause of action was impossible of performance, requiring a reversal of this cause with direction to the trial court to proceed in said matter not inconsistently with this opinion. It is so ordered.

All the Justices concur.