**COSDEN OIL & GAS CO. v. MOSS et al.**

No. 17573.    Opinion Filed May 29, 1928.

(Syllabus.)

1. **Contracts—Nonperformance Excused by Nonexistence of Subject-Matter—"Impracticable" Given Legal Effect of "Impossible."**

Where it is apparent that a contract was entered into on the basis of the existence of something essential to its execution, there is the implied condition of the contract that if literal performance becomes impracticable or impossible by reason of the nonexistence of the essential thing, to the extent of nonexistence performance will be excused, and in such circumstances the terms "impracticable" and "impossible" are of equal legal effect.

2. **Same—Oil and Gas—Construction of Drilling Contract for Test Well in Undeveloped Territory—Test Well Defined —Drilling to Specified Maximum Depth Excused by Encountering Formations Proving Production Improbable—Refusal of Court to Instruct on Principle of Dispensation Reversible Error.**

In a drilling contract entered into for the purpose of determining the commercial existence or nonexistence of oil or gas in undeveloped territory, which provides for a completed test well, with a specified maximum depth to which the well shall be drilled unless oil or gas be found in paying quantities at a lesser depth, and it is apparent that the parties contracted on the basis that a well could be drilled to such maximum depth with the reasonable expectation of finding such minerals, a completed test well means a well drilled to the specified maximum depth, or to such lesser depth of discovery of oil or gas in paying quantity, or to the depth of encounter of a geologic formation within the specified maximum depth which in the business of production of such minerals it is recognized will reasonably preclude the probability of finding oil or gas in or below such formation. And in an action for damages for a breach of such contract, where the existence of such forma-

tion is at issue, the question is one of fact for determination by the jury under proper instructions of the trial court, or by the court as a trier of the fact; and in such case, refusal of requested instructions, embodying the principle of dispensation where none otherwise are given, constitutes reversible error.

3. **Oil and Gas—Measure of Damages for Failure to Complete Test Well According to Drilling Contract.**

In an action for damages for failure to complete a test oil or gas well, where the well has been drilled to a less depth than the specified maximum depth and abandoned without legal excuse, the measure of damages is the cost to complete the well from the depth of abandonment to the maximum depth specified in the contract.

Commissioners' Opinion, Division No. 1.

Error from District Court, Tulsa County; Z. I. J. Holt, Judge.

Action by E. K. Moss et al. against Cosden Oil & Gas Company, on contract. Judgment for plaintiffs, and defendant appeals. Reversed and remanded, with directions.

J. C. Denton, J. H. Crocker, R. H. Wills, and I. L. Lockewitz, for plaintiff in error.

H. B. Martin, C. A. Warren, and John Cantrell, for defendants in eror.

TEEHEE, C. In the consideration of this cause, we will refer to the parties as they appeared in the trial court. A brief chronological narrative of certain undisputed facts will be helpful to a proper understanding of the respective theories of the parties in this litigation.

E. K. Moss, W. B. Webb, and R. J. Hill, the plaintiffs, in 1917, were the owners of certain oil and gas leaseholds situated in Tillman county. During the year they undertook to drill a test well on a particular lease, and upon drilling to a depth of about 860 feet, they deemed it advisable to seek financial aid in their undertaking. To that end the plaintiff Moss entered into certain negotiations with the defendant, Cosden Oil & Gas Company, a corporation, at Tulsa, Okla., through its managing officer. As a basis of the negotiations a memorandum of agreement was entered into on November 23, 1917, by the negotiators, whereunder it was proposed, in substance, that an undivided three-fourths interest in certain leaseholds, including the one on which the well was located, would be assigned under satisfactory title to the defendant for a consideration of the assumption of indebtedness not to exceed $5,000, then incurred by plaintiffs in their drilling operations, with the

obligation of defendant to drill the well mentioned to a depth of 2,000 feet, unless oil or gas be found in paying quantity at a lesser depth. It was further proposed thereunder, that defendant would have the free use of certain drilling tools owned by plaintiffs then used in their drilling operations at the well. The proposal was conditioned upon investigation and favorable report by defendant's geological department, and to that end defendant had the acreage comprised in the leaseholds investigated by its geologist.

The memorandum of agreement was supplemented on November 30, 1917, by letter of defendant, whereunder defendant further proposed that a cash advancement of $1,500 would be made by it to be applied on the drilling indebtedness to enable immediate resumption of the drilling commenced by plaintiffs, and to be continued by defendant unless a granite formation be encountered at a lesser depth than 2,000 feet, whereupon there would be a **discontinuance** thereof, and the obligation of defendant terminated with reimbursement by plaintiffs of the cash advancement. On December 4, 1917, defendant, by letter, further supplemented the memorandum of agreement by additional proposals to the effect that upon defendant's being convinced that the formation at the bottom of the test well was not that of granite, defendant would make an additional cash advancement of $3,500 to be used in the payment of plaintiffs' drilling indebtedness, and continue drilling of the well to the depth of 2,000 feet unless oil or gas be found in paying quantity at a lesser depth, or a granite mass formation be encountered at such lesser depth, whereupon there would be performance of defendant's obligation with no duty of plaintiffs to refund the first cash advancement of $1,500. In the event defendant elected to continue drilling the well, and make the additional cash advancement of $3,500, plaintiffs were to assign to the defendant an undivided three-fourths interest in all the leaseholds in the vicinity of the well described in the memorandum of agreement, and all material furnished by defendant in the further drilling of the well to be its exclusive property in the event of a nonpaying well, otherwise, ownership of such material would be in the proportion of the respective interests of the parties in the leaseholds, with the cost of further operations to be borne by the parties on a like basis. On June 15, 1918, plaintiffs executed assignments to defendant of their whole title to 2,937 acres of the leaseholds described in the memorandum of agreement.

On June 17, 1918, defendant wrote the plaintiffs as follows:

"I am handing you herewith abstracts of title covering the following described lands, which you will have continued to date and return them to us for examination by our legal department. (Description omitted.)

"You will also order new abstracts of title covering the tracts shown below, and submit same for examination. (Description omitted.)

"After the above abstracts have been examined and accepted by our attorneys, we will take over by assignment leases covering the lands out together with S. W. ¼ of section 16-1S.-15W.. and acreage in township 1S.-14 W., described as follows: (Description omitted.) And agree to take over the well which is now drilling in the N.W.¼ of section 15-1S-15W., and complete same to a depth of 2,000 ft., unless oil or gas is found in paying quantities at a lesser depth. It being understood that we are to have the use of the rig and all equipment now on said lease, free of cost, until the well is completed, at which time all equipment turned over to us is to be returned.

"We further agree to pay to R. J. Hill the sum of $2,500, and assume all unpaid bills in connection with the drilling of said well, not to exceed the sum of $6,000.

"Before any of the above payments are to be made by the said Cosden Oil & Gas Company, you are to furnish all requirements asked for in connection with the titles to said lands.

"Kindly give this your early attention in order that we may get things in shape and get to going."

On November 5, 1918, defendant commenced operations to deepen the well mentioned, which was at a depth of 986 feet upon assignment of the leaseholds, and obstructed with certain tools and broken casing. Finding it impossible to remove the obstruction, defendant, without objection by plaintiffs, abandoned the well, and commenced drilling of another well about 100 feet from the original location on January 13, 1919, and drilled the same to a depth of 1,410 feet, when a geologic formation alleged by defendant to be a granite mass formation was encountered, whereupon the defendant, on September 4, 1919, abandoned further drilling on the well.

By appropriate pleadings plaintiffs declared the letter of June 17, 1918, as the contract between the parties wherewith it was alleged they had complied by assignment of the leaseholds to defendant, and alleged a breach thereof by defendant by failure to drill the well to the specified depth,

to their damage in the sum of $35,000 for which they prayed judgment.

Defendants answered by express and specific denial of the allegations on which plaintiffs sought a recovery, and interposed a further defense of an oral contract between the parties, many of the terms and condition of which being evidenced by the memorandum of agreement and the several letters of defendant addressed to plaintiffs above referred to, the contract having been concluded prior to its letter of June 17, 1918, which contract was further orally modified by agreement of the parties to drill another well upon failure of defendant to remove the obstructions from plaintiffs' well, which it undertook to deepen pursuant to the terms and conditions of its original contract, and that there was full performance thereof upon encountering the granite mass formation in the second well at a depth of 1,410 feet; that there was a partial failure of the consideration in that plaintiffs failed to assign to defendant all the leaseholds described in the memorandum of agreement; and by cross-petition alleged mutual mistake in the letter declared on by plaintiffs, in that the encountering of a granite mass formation at a lesser depth of 2,000 feet should determine defendant's obligation was omitted therefrom, and prayed that if the court adjudged the said letter to be the written contract of the parties, as alleged by plaintiffs, the same be reformed to express the real intentions of the parties by incorporating therein the omitted provisions; and thereupon prayed that plaintiffs take nothing, and that it be hence dismissed from the action with its costs.

Plaintiffs, by replication, traversed all new matter contained in defendant's answer and allegations of its cross-petition. The cause being thus rendered at issue, upon trial there was a jury verdict and judgment thereon for plaintiffs in the sum of $10,000.

In the trial of the cause, as shown by the pleadings, it was the theory of plaintiffs that the letter of June 17, 1918, constituted the entire and complete contract whereby the defendant was obligated to drill the well begun by plaintiffs on a certain leasehold included in the properties transferred to the defendant to a depth of 2,000 feet unless oil or gas be found in paying quantity at a lesser depth, in which event there would be fulfillment of the contract by the defendant. It was the theory of defendant that the contractual relationship was by virtue of an oral contract agreed upon prior to the letter relied on by plaintiffs, whereby the defendant was obligated to drill said well to a depth of 2,000 feet, unless oil or gas be found in paying quantity at a lesser depth, or unless a granite mass formation be encountered at a lesser depth, and that in the drilling thereof, such drilling machinery and equipment then at the well owned by plaintiffs would be available to defendant free of cost, and that in the event of either the discovery of oil or gas in the quantity and manner specified, or the encountering of granite likewise specified, there would thereupon be fulfillment of the contract; that the memorandum of agreement and the several letters including the letter relied on by plaintiffs were but evidence of the terms and conditions of the oral contract; that at the time of the making of such oral agreement, the well involved was obstructed by well-drilling material, and that, subsequently, upon failure of defendant to remove such obstruction, the oral agreement was modified, in that in lieu of the obstructed well defendant was obligated to drill another well on the particular leasehold as an original well under the same terms and conditions as obtained relative to the drilling of the abandoned well, and that the encountering of a granite mass formation at a depth of 1,410 feet in the new well constituted performance of its obligation to plaintiffs; and, further, that if the letter relied on by plaintiffs was adjudged to be the contract, the like conditions therein also obtained.

Concerning the evidence, it is sufficient to observe that the respective theories of the parties were supported by competent evidence, upon which, in the disposition we shall make of the cause, we, of course, express no opinion as to the weight or credibility thereof.

For a reversal of the judgment defendant submits the cause upon four propositions, and all based upon either or both the refusal by the trial court of certain requested instructions presented by defendant and the giving of certain alleged erroneous instructions by the court on its own motion. To a disposal of the cause, it is necessary to consider only the first and third propositions.

Preliminary thereto, plaintiffs by renewal urge upon us their motion to dismiss this appeal on the ground of a defect of parties defendant in error, which it is contended prevents our consideration of the merits of the cause. Upon its original presentation, the motion was denied. This we regard as a final disposition of the motion, and therefore proceed to the consideration of the merits of the appeal. Thacker v. Ross, 105

Okla. 99, 231 Pac. 1060; Quincy Showcase Works v. Briscoe, 126 Okla. 144, 259 Pac. 128.

Defendant's first and chief ground of appeal is stated as follows:

"The trial court committed reversible error in not giving to the jury any instructions covering the issue, theory and defense that, regardless of the express terms of the contract sued on herein, if it was assumed and believed by both the plaintiffs and defendant at the time of entering into the aforesaid contract that the well involved herein could be drilled to the depth of 2,000 feet without granite being encountered, the defendant, upon encountering granite in the drilling of said well, if granite was in fact encountered, was relieved from drilling the same deeper."

Thereunder, it is contended that the court erred in its refusal of certain requested instructions embodying defendant's theory and defense, which instructions were to the effect that it was the universal opinion of geologists and oil and gas operators that oil and gas are not found in or below a granite mass formation, and the parties having contracted under the belief, assumption, and contemplation that a test well could be drilled to the specified depth without encountering such formation, there was the implied condition of the contract that the encountering of such formation at a lesser depth operated as performance of the contract, and that if the jury found by a preponderance of the evidence that such formation was encountered by defendant, as alleged, their verdict should be for the defendant. And thereunder it is further contended that the court further erred in giving the following instructions:

"You are instructed that where a party has contracted for a good and sufficient consideration to perform the conditions of an agreement, it is no defense to an action to recover for the defendant's failure to perform, that the performing of the contract would have been useless.

"You are instructed that a party who has paid a good consideration to have a well drilled is entitled to have that well drilled to the agreed depth, and it can avail the other party nothing to show that the drilling of the well as agreed would not probably have resulted in the finding of oil or gas"

Since it is the duty of the trial court to submit to the jury under proper instructions every issue of fact raised by the pleadings of the parties and supported by competent evidence (Republic Nat. Bank v. First State Bank, 110 Okla. 299, 237 Pac. 578), our consideration of these contentions requires an examination of the instructions as a whole to determine if the court erred as is contended, and if so, the quality of such error.

In its argument and reference to authorities in support of the points urged, defendant proceeds on the theory that it is immaterial whether the cause be determinable under the letter pleaded and relied on by plaintiffs as the contract, or under the alleged oral contract pleaded by the defendant, as, in either case, it was the assumption of the parties that literal performance of the contract would be dependent on the existence of a certain condition essential to its execution. The assumed existent essential condition, as already noted, was that the well could be drilled to the maximum depth without encountering a granite mass formation, and that in this the parties having been mistaken, it is urged that performance of the contract by the drilling of the well to the maximum depth was excused, not on the theory of the impossiblity of performance, but on the theory that performance depended on the nonexistence of granite to the depth specified. This is but another way of saying that oil or gas, the minerals sought by both parties, does not exist either in or beneath a granite mass formation which apparently under the record is a prevalent geological theory, and so recognized by operators in the oil and gas industry, and that when granite was encountered in the well, the contract was concluded, as further effort at discovery at the particular point of prospect was rendered futile. Evidence of this theory and belief among oil and gas operators was introduced by defendant, and it was not denied by plaintiffs, but, on the contrary, it appears to have been conceded by plaintiffs that in such case further drilling in such a geologic formation would be without hope or expectation of finding either of the minerals sought.

By paragraph 8 of the instructions, the court in a measure covered the ground on which this contention of defendant was based, in that the jury were told that if they found by a preponderance of the evidence that the letter of June 17, 1913, constituted the contract of the parties, and that the granite provision was omitted therefrom, or that the relationship of the parties arose by virtue of the alleged oral contract with the terms and conditions thereof as alleged by defendant, and that a granite mass formation was in fact encountered, then, in that event, their verdict should be for the defendant. It is, of course, difficult to measure the force and effect of the instructions heretofore quoted upon the minds of the jurors, but as they went to the heart of defendant's

theory and defense, it is not unreasonable to say that they relieved the jury from considering whether the defendant in fact encountered a granite mass formation wherein and whereunder, as shown by the record of the case, neither of the minerals sought has been found to exist, and, hence, the rule that the verdict of the jury must be regarded as an adverse finding of the existence of a granite mass formation (Sherry v. North, 94 Okla. 222, 221 Pac. 497), a point counter-urged by plaintiffs, would appear not to be controlling.

Whether the contractual relationship of the parties was created by virtue of the letter of June 17, 1918, or under the oral contract, it cannot be gainsaid that the subject-matter and purpose of the contract was to test the leasehold, shown to be situated in undeveloped territory, for the existence and continuance of oil or gas in paying quantity or their nonexistence, and, manifestly, that upon the test further operations in the locality of the well depended. It was to the mutual interest of both parties that the test should be thorough, for if the minerals sought, or either of them, were discovered and reduced to possession, it meant an overnight skyrocketing in the value of the leaseholds held by plaintiffs in the locality of the well and of those acquired by defendant under the contract. In the light of the record, we may justifiably say that it was the belief, assumption, and contemplation of the parties that a test well could be drilled to a depth of 2,000 feet without encountering a geologic formation that would, under the belief of those well versed and experienced in the producing branch of the oil and gas industry, preclude the probability of finding oil or gas at a depth either in or below the encountered formation. If the test showed the nonexistence of these minerals at a lesser depth than the specified depth by reason of the existence of a granite mass formation, as contended by defendant, the contract was at an end. Where it is apparent that a contract was entered into on the basis of the existence of something essential to its execution, there is the implied condition of the contract that, if literal performance becomes impracticable or impossible by reason of the nonexistence of the essential thing, to the extent of non existence performance will be excused, and in such circumstances the terms "impracticable" and "impossible" are of equal legal effect. Mineral Park Land Co. v. Howard, 172 Cal. 289, 156 Pac. 458, L. R. A. 1916F, 1; Virginia Iron, Coal & Coke Co. v. Graham, 124 Va 692, 98 S. E. 659; Kinzer Construction

Co. v. State, 125 N. Y. Supp. 46; Fritzler v. Robinson, 70 Iowa, 500, 31 N. W. 61; St. Louis S. W. Ry. Co. v. Johnston, 58 Tex. Civ. App. 639, 125 S. W. 61; Usher v. Hiatt, 18 Kan. 195; Woodworth v. McLean, 97 Mo. 325, 11 S. W. 43; Paxton Lbr. Co. v. Panther Coal Co., 83 W. Va. 341, 98 S. E. 563; 13 C. J. 640, section 714.

Plaintiffs recognize the application of this principle where performance of the contract is rendered impossible, but contend that the rule has no application to the case at bar, for the reason that impossibility of performance was not shown. Authorities relied on in support of this point are the following: Gotherman v. Oriental Oil Co. (Tex. Civ. App.) 272 S. W. 616; Covington Oil Co. v. Jones (Tex. Civ. App.) 244 S. W. 287; Berry v. Wells, 43 Okla. 70, 141 Pac. 444; Clements v. Jackson County Oil & Gas Co., 61 Okla. 247, 161 Pac. 216; Henry Oil Co. v. Head (Tex. Civ. App.) 163 S. W. 311; Okmulgee Producing & Refining Co. v. Baugh, 111 Okla. 203, 239 Pac. 900; Ardizonne v. Archer, 72 Okla. 70, 178 Pac. 263; Chapman v. Clements, 22 Ky. L. 17, 56 S. W. 646; 13 C. J. 635, section 706. With one exception, these cases involved drilling contracts, and in each of them the contractor was held to the literal terms of his contract. In one of them, Clements v. Jackson County Oil & Gas Co., and Berry v. Wells, the excepted case, application of the principle of dispensation was refused on the theory that the conditions constituting the impossibility of performance did not consist in the nature of the thing to be done, but in the inability of the party to perform the contract, and in the others there appears to be an absence of attempted application of the principle, and in none of the drilling contract cases was there involved the identical state of facts as are here present.

Since the principle of dispensation is of recognized application, we are justified in the legal assumption that had the circumstances been the same there as here, the conclusions we have reached upon this phase of the case would also there have been announced. For this reason, the cases thus relied on by plaintiffs are not here controlling.

In North German Lloyd Co. v. Guaranty Trust Co., 244 U. S. 12, 37 S. Ct. 490, 61 L. Ed. 960, which involved a contract of bailment, the court, in applying the principle of dispensation, announced a rule of construction that in the nature of the business out of which the cause in hand arose enables the correct determination of the point

at issue. It was there said that "business contracts must be construed with business sense as they would be understood by intelligent men of affairs." The contract in hand, be it the written or the oral, called for a completed well—one that tested the territory for the commercial existence or nonexistence of oil or gas. In Frost v. Martin (Tex. Civ. App.) 203 S. W. 72, it was held:

"In an oil and gas lease providing that, 'when a well is once begun, the drilling thereof should be prosecuted with due diligence until same is completed,' the word 'completed' means finished, or sunk to the depth necessary to find oil or gas in paying quantities, or to such a depth as in the absence of such oil or gas would reasonably preclude the probability of finding it at a further depth."

The rule there laid down was also applied in Hall v, McClesky (Tex. Civ. App.) 228 S. W. 1006, and in Chapman v. Ellis (Tex. Civ. App.) 254 S. W. 615. These cases are in consonance with the rule of construction as announced in North German Lloyd Co. v. Guaranty Trust Co., and are authority for the construction which in the state of the record must be given to the contract in this case under the applied principle of dispensation. Therefore, we hold that, in a drilling contract entered into for the purpose of determining the commercial existence or nonexistence of oil or gas in undeveloped territory, which provides for a completed test well with a specified maximum depth to which the well shall be drilled, unless oil or gas be found in paying quantity at a lesser depth, and it is apparent that the parties contracted on the basis that a well could be drilled to such maximum depth with the reasonable expectation of finding such minerals, a completed test well means a well drilled to the specified maximum depth, or to such lesser depth of discovery of oil or gas in paying quantity, or to the depth of encounter of a geologic formation within the specified maximum depth which, in the business of production of such minerals, it is recognized, will reasonably preclude the probability of finding oil or gas in or below such formation. And in an action for damages for a breach of such contract, where the existence of such formation is at issue, the question is one of fact for determination by the jury under proper instructions of the trial court, or by the court as a trier of the fact; and, in such case, refusal of requested instructions embodying the principle of dispensation where none otherwise are given constitutes reversible error.

The next proposition submitted by defend-

ant requiring our consideration is stated as follows:

"The trial court committed reversible error in its instructions to the jury as to the law governing the plaintiff's measure of damages."

Thereunder, defendant contends that the trial court committed reversible error in the refusal and giving of certain instructions. Defendant's requested instructions were to the effect that if the jury found by a preponderance of the evidence that plaintiffs were entitled to recover, the measure thereof would be the reasonable cost and expense of drilling the well from 1,410 feet, the depth to which the second well was drilled, to the specified depth of 2,000 feet. Under the instructions given, the jury were told, in effect, that the measure of recovery would be the reasonable cost of drilling from the depth of the original well at the time of the contract to the specified depth of 2,000 feet, subject to such credit as the jury may find defendant entitled to by reason of loss sustained in the failure of plaintiffs to assign all of the leaseholds agreed upon, and as was sustained from the failure of plaintiffs to furnish without charge such drilling tools and equipment used by them in their drilling operations then located at the well.

In the state of the case it must be assumed, in our consideration hereof, that it was agreeable to plaintiffs that defendant should abandon the original well upon its failure to remove the obstruction therein, and in lieu thereof undertake the drilling of the second well, as was done, so that it could hardly be contended that plaintiffs would be entitled to a recovery for the cost of the drilling of the second well representing the depth from 986 feet, to which depth the original well had been drilled by them, to 1,410 feet in the second well, the drilling of which had been done with their sanction. Hence, upon substitution of the location for the making of the test, the second location must be regarded as the test well provided for by the contracting parties. Upon this phase of the case, therefore, we are of the opinion that there is no room for controversy, for it is a settled rule that in an action for damages for failure to complete a test oil or gas well, where the well has been drilled to a less depth than the specified depth, and abandoned without legal excuse, the measure of damages is the cost to complete the well from the depth of abandonment to the maximum depth specified in the contract. Covington Oil & Gas Co. v. Jones, supra; Eysenbach v. Cardinal Petroleum Co., 110 Okla. 12, 236 Pac. 10; Ardizonne v. Archer,

supra; Okmulgee Producing & Refining Co. v. Baugh, supra. The court therefore erred in its refusal of the requested instructions upon the measure of damages, and in the instructions given.

For the foregoing reasons, therefore, the judgment of the district court is reversed, and the cause remanded, with instructions to vacate the judgment, and award the defendant a new trial, and for such further proceedings not inconsistent with this opinion.

REID, FOSTER, HERR, and JEFFREY, Commissioners, concur.

LEACH and BENNETT, Commissioners, dissent.

By the Court: It is so ordered.

Note.—See under (1) 13 C. J. p. 640, §714; 6 R. C. L. p. 621; 2 R. C. L. Supp. p. 167; 4 R. C. L. p. 430. 6 R. C. L. p. 998; 2 R. C. L. Supp. p. 260; 4 R. C. L. Supp. p. 454; 6 R. C. L. Supp. p. 423; 7 R. C. L. Supp. p. 208. (2) 40 C. J. p. 1069. §685; p. 1128. §760. (3) 40 C. J. p. 1133. §763.