## MORRISON v. W. L. GREEN COMMISSION CO.

No. 8072—Opinion Filed Nov. 21, 1916.

(161 Pac. 218.)

**1.   Appeal and Error—Time for Taking Proceedings—Review of Order on Demurrer.**

By reason of section 5255, Rev. Laws 1910, as amended by act of February 14, 1911 (Laws 1911, ch. 18), this court cannot consider the question whether the district court erred in sustaining a demurrer to two counts of defendant's answer stating separate grounds of defense to the action, when the petition in error and case-made are filed in this court more than six months after the

ruling of the court was made sustaining such demurrer, notwithstanding the fact that the proceeding was begun within six months from the date of the order of the court overruling the motion for new trial.

**2. Contract—Breach—Excuse for Nonperformance—Evidence.**

In an action for damages for breach of contract it is not error in the trial court to exclude testimony offered on behalf of the defendant which does not tend to show the right to rescind the contract by him, or that the contract was impossible of performance, but merely tends to show that the performance was more expensive or more difficult.

(Syllabus by Galbraith, C.)

Error from District Court, Grant County; W. M. Bowles, Judge.

Action by the W. L. Green Commission Company against C. G. Morrison, doing business as the Morrison Bros. Mills. Judgment for plaintiff, and defendant brings error. Affirmed.

Sam P. Ridings, for plaintiff in error.

H. Z. Wedgwood, for defendant in error.

Asp, Snyder, Owen & Lybrand, amici curiae.

Opinion by GALBRAITH, C. W. L. Green Commission Company, hereinafter designated as plaintiff, commenced this action against C. G. Morrison, hereinafter designated as defendant, for damages for breach of a contract for the sale and delivery of wheat. · It is alleged in the petition that the plaintiff agreed to buy and the defendant agreed to sell and deliver 3,000 bushels of No. 2 hard wheat, at 87⅞ cents per bushel, at New Orleans, La.; for August, 1914, delivery; that the plaintiff, relying upon the performance of said contract, on behalf of the defendant, resold said quantity of wheat, and that the defendant failed to deliver the same, and on account of such failure the plaintiff was forced to buy the wheat in the open market at $1.13 per bushel, and thereby was compelled to pay the sum of $933.75 in excess of the amount which he had agreed to pay the defendant,' and judgment was prayed in this amount, together with 6 per cent. interest thereon from September 1, 1914.

The answer was, first, a general denial. The second ground of defense was that the contract being signed by one of the parties and not being signed by the plaintiff, was for that reason void; and the third ground of defense was that on account of the war in Europe the Rock Island Railroad Company placed an embargo on the shipment of wheat from Medford, Okla., where the defendant was doing business, to New Orleans, in July and August, 1914, and he was therefore not able to procure cars for the shipment of wheat, and further, that the banks of the country, owing to the flurry caused in financial circles by the world war then raging, refused to pay out money, and "it was impossible for the said defendant to receive pay for the purchase price of said wheat;" therefore the contract was impossible of performance. A demurrer was interposed to the second and third grounds of defense and sustained by the court. Afterwards the cause came on for trial on the petition and the general denial in the answer. At the close of the evidence the court instructed the jury to return a verdict for plaintiff for the amount claimed. The verdict was returned, and judgment entered thereon. To review that judgment this appeal has been prosecuted.

The first assignment of error is to the ruling of the court in sustaining the demurrer to the second and third grounds of defense. The order sustaining the demurrer was made and entered on the 7th day of May, 1915. The petition in error and case-made were filed in this court on March 2, 1916. Objection is made to the consideration of this assignment for the reason that more than six months expired between the day the order complained of was made and filing petition in error and case-made in this court, and it is contended for that reason that the court is without jurisdiction to consider this assignment.

This objection seems to be well taken. Section 5255, Rev. Laws 1910, as amended by Sess. Laws 1911, p. 35, reads in part:

"All proceedings for reversing, vacating, or modifying judgments, or final orders shall be commenced within six months from the rendition of the judgment or final order complained of. * * *"

More than eight months intervened between the date of the order sustaining the demurrer and commencing the proceedings in error in this court, and that order, being appealable, became final at the expiration of six months after it was made.

In Holland v. Beaver, 29 Okla. 115, 116 Pac. 766, Ann. Cas. 1913A, 814, the first paragraph of the syllabus reads:

"This court cannot consider the question of whether a district court erred in sustaining a demurrer to a petition, when the petition in error is filed more than one year after the ruling of the court sustaining such demurrer was made, notwithstanding the fact that proceedings are begun within one year from the date of judgment subsequently entered."

It will be recalled that this cause arose prior to the amendment of section 5255, Rev. Laws 1910, by the act of February, 1911, above quoted, and that the section prior to the amendment allowed one year's time instead of six months to commence proceedings in error.

Again in Rhome Milling Co. v. Farmers' & Merchants' Nat. Bank of Hobart, 40 Okla. 131, at 134, 136 Pac. 1095, at 1096, the court, in discussing this question, said:

"The first specification of error set forth in plaintiff's brief and urged for reversal of the cause is that the court erred in sustaining defendant's demurrer to the first count of its amended petition and to the cause of action therein set forth. This action of the trial court, however, cannot be reviewed. At the time the order complained of was rendered, section 6082, Comp. Laws 1909 (Rev. Laws 1910, sec. 5255), was in force, by which it is required that a proceeding to reverse a judgment or a final order of a court in a civil action shall be commenced within one year after the rendition of the judgment or order complained of. More than two years elapsed after the trial court sustained said demurrer before this proceeding was instituted, and, under the previous decisions of this court, the court was without jurisdiction to review the order of the court sustaining said demurrer. Holland v. Beaver, 29 Okla. 115, 116 Pac. 766, Ann. Cas. 1913A, 814; Reynolds v. Phipps et al., 31 Okla. 788, 123 Pac. 1125. See, also, Blackwood v. Shaffer, 44 Kan. 273, 24 Pac. 423, which is also controlling upon this question."

The remaining assignment of error is:

"That the court erred in refusing to hear testimony of the defendant, and in sustaining objection to the offers made on page 60 of the record."

It appears from the record that the defendant, notwithstanding the demurrer had been sustained to that part of his answer, setting out the reason for his failure to perform the contract, the court was willing to and did allow him to state his reason, as is shown from the following proceeding:

"Q. Now I will ask you what the financial condition was so far as being able to collect any money on drafts or checks during the latter part of August or the first part of September, 1914?

"Mr. Wedgewood: Objected to as incompetent, irrelevant, and immaterial, and too general.

"The Court: I think it is, but overruled. Let him answer.

"A. Well, there was quite a good deal of stir in the banking business at that time; some of the grain companies wired us to not make any drafts that they couldn't pay, but the Green Commission Company had never

wired us because we never shipped them any. I don't know whether that is the reason or not, because we never shipped them any. Q. What is your experience so far as knowing whether the banks would hand out any money on drafts, if so, how much?

"Mr. Wedgwood: Objected to as incompetent, irrelevant, and immaterial.

"The Court: Yes, sustained. You should have tried these fellows to see whether or not you could get your money.

"Mr. Riding: Exception. The defendant now offers to show by this witness that during the latter part of the month of August and the first part of September, 1914, that the financial condition was such that only a limited amount, $5, $10, or $15, would be paid by any of the banks per day, throughout the country on any checks or drafts, and that it was impossible during the last 15 or 20 days of the month of August, 1914, and the first part of September, 1914, to obtain any money from any bank in the country in the sum of $2,000 or more.

"Mr. Wedgwood: To which the plaintiff objects as incompetent, irrelevant, and immaterial.

"The Court: Yes, sustained.

"Mr. Riding: Exception.

"The Court: Wait a minute, I just want to ask a question. Q. Did you tender this wheat to the railroads? A. Well, I didn't tender it because I didn't have the chance; I went to the agent every morning and asked him, and the embargo was still on. Q. You didn't tender this wheat did you to the railroad company to deliver? A. I couldn't, very well; they wouldn't set out a car. Q. Well, I mean did you try? A. Yes, sir; I don't know as I tried specially in the Green case, but I tried to get cars and I couldn't get any for New Orleans or Galveston; the embargo went on I think in the latter part of July.

"The Court: What do you call an embargo? A. They refuse to take cars for either of the ports; either Galveston or New Orleans at our station. Of course, I am only doing business at one station. Q. On account of the— A. Of the war, I guess. Q. We didn't have any war here, did we? A. No, but we had an embargo on the railroads, at least we had at Jefferson.

"The Court: Stand aside."

This testimony of the defendant, it will be seen, did not give a sufficient ground for his rescinding the contract, nor offer any sufficient excuse for his failure to perform. If it did not then clearly the refusal of the offer and excluding this evidence was not error. This division of the commission has recently had occasion to consider the law controlling the rescission of contracts and what constitutes an impossibility of performance, so as to justify a rescission of the con-

tract and a failure to perform. In No. 7998, W. P. Clements and W. E. Green v. Jackson County Oil & Gas Co. et al., 62 Oklahoma, 161 Pac. 216, the second and third paragraphs of the syllabus read as follows:

"To bring a contract within the rule of impossibility of performance it must appear that the thing to be done cannot by any means be accomplished.

"An allegation that a party to a contract 'did not have funds' to make the payments required thereunder is not alone sufficient to support a rescission of such contract by the other party."

The defendant voluntarily entered into this contract by which he agreed to sell and deliver the quantity of wheat at New Orleans during the month of August, 1914. He voluntarily placed this obligation upon himself; he made no provision in his contract to relieve him of this obligation in the event of war, or the placing of an embargo on the shipments of grain from his town to New Orleans by the railroad. He makes no claim that he could not have purchased this wheat at some other market and have delivered it by some other road other than the Rock Island. The contract was not impossible of performance. The wheat could have been delivered as the contract provided. The plaintiff purchased the amount of wheat in open market in order to enable him to perform his contract which he had entered into on the faith of the contract made with the defendant, and owing to the failure of the defendant to perform he was compelled to pay a higher price for the wheat than the defendant had agreed to furnish it for. The difference in the price and the interest thereon is the amount claimed as damages resulting to him on account of the breach of the contract. For this amount the judgment was rendered in the trial court, and should therefore be affirmed.

By the Court: It is so ordered.